**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ALL YEAR HOLDINGS LIMITED, | Case No. 21-12051-mg |
| Debtor. | |
| AYH WIND DOWN LLC, through Ofer Tzur and Amir Flamer, solely in their joint Capacity as Claims Administrator, | Adv. Pro. No. 23-01180-mg |
| Plaintiff, | |
| -against- | |
| YOEL SILBERSTEIN, | |
| Defendant. | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
TO WITHDRAW THE REFERENCE AND COMPEL ARBITRATION**

---

Paul H. Aloe
David N. Saponara
KUDMAN TRACHTEN ALOE POSNER LLP
488 Madison Avenue, 23rd Floor
New York, New York 10022
Tel: (212) 868-1010
paloe@kudmanlaw.com
dsaponara@kudmanlaw.com

*Attorneys for Defendant Yoel Silberstein*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ...................................................................................................................... 2

   A.  The Chapter 11 Case ................................................................................................... 2

   B.  Pre-Bankruptcy Agreements Between Defendant and the Debtor ....................... 3

   C.  Procedural History in the Adversary Proceeding ................................................. 4

ARGUMENT ........................................................................................................................... 5

   I.  The Reference to the Bankruptcy Court Should Be Withdrawn for Cause .......................... 5

   A. The Adversary Proceeding is Non-Core The Bankruptcy Court Lacks Final
      Adjudicatory Authority ............................................................................................. 6

   B. Defendant Does Not Consent to Final Adjudication by the Bankruptcy Court ................. 9

   C. The Remaining *Orion* Factors Favor Withdrawal .............................................. 9

   II.  The Court Should Compel Arbitration of Plaintiff's Claim ............................................... 12

   A. Defendant and the Debtor Entered Into a Valid Arbitration Agreement That
      Is Binding on Plaintiff as the Debtor's Assignee ................................................... 13

   B. The Arbitration Agreement Is Broad and Covers the Sole Claim Alleged in
      Plaintiff's Complaint ................................................................................................ 15

CONCLUSION ....................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1800Postcards, Inc. v. Morel*,
153 F. Supp. 2d 359 (S.D.N.Y. 2001) ........................................................................... 8

*Abdullayeva v. Attending Homecare Servs. LLC*,
928 F.3d 218 (2d Cir. 2019) ........................................................................................ 15

*ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*,
307 F.3d 24 (2d Cir. 2002) .......................................................................................... 16

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ..................................................................................................... 15

*Baker v. Simpson*,
613 F.3d 346 (2d Cir. 2010) .......................................................................................... 6

*Benefits Ins. Agency v. Arkison*,
573 U.S. 25 (2014) ......................................................................................................... 8

*Blum's, Inc. v. Ferro Union Corp.*,
36 A.D.2d 584 (1st Dep't 1971) ................................................................................... 14

*Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995) ............................................................................................. 16

*Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
462 B.R. 457 (S.D.N.Y. 2011) ....................................................................................... 6

*DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*,
464 B.R. 587 (S.D.N.Y. 2012) ................................................................................. 6, 10

*Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.*,
905 F. Supp. 2d 526 (S.D.N.Y. 2012) ............................................................................ 6

*Fantastic Indus., Inc. v. Kryman*,
No. 20-CV-2402 (ERK) (RER), 2021 WL 2809979 (E.D.N.Y. July 6, 2021) ............ 15

*Granfinanciera S.A. v. Nordberg*,
492 U.S. 33 (1989) ......................................................................................................... 9

*In re Cont'l Broker-Dealer Corp.*,
368 B.R. 109 (Bankr. E.D.N.Y. 2007) ......................................................................... 14

*In re Coudert Bros.*,
No. 11-CV-4949 (PAE), 2011 WL 7678683 (S.D.N.Y. Nov. 23, 2011)..................................... 6, 8

*In re EMS Financial Services, LLC*,
491 B.R. 196 (E.D.N.Y. 2013) ................................................................................................ 6, 10

*In re Iannacchino*,
No. 15-CV-09408 (NSR), 2018 WL 1009279 (S.D.N.Y. Feb. 20, 2018) .................................... 7

*In re Joseph DelGreco & Co., Inc.*,
No. 10-CV-422 (NRB), 2011 WL 350281 (S.D.N.Y. Jan. 26, 2011) .......................... 8, 10, 11, 12

*In re Luis Elec. Contracting Corp.*,
165 B.R. 358 (Bankr. E.D.N.Y. 1992)......................................................................................... 7

*In re Money Centers of Am., Inc.*,
579 B.R. 710 (S.D.N.Y. 2016)................................................................................................ 7, 10

*In re Orion Pictures Corp.*,
4 F.3d 1095 (2d Cir. 1993).................................................................................................. 5, 7, 8

*In re Residential Cap., LLC*,
527 B.R. 865 (S.D.N.Y. 2014).................................................................................................. 5, 11

*In re Robert Plan Corp.*,
777 F.3d 594 (2d Cir. 2015)......................................................................................................... 6

*In re The VWE Grp., Inc.*,
359 B.R. 441 (S.D.N.Y. 2007).................................................................................................... 11

*Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*,
36 N.Y.2d 121 (1975) ................................................................................................................ 14

*LightSquared Inc. v. Deere & Co.*,
No. 13-CV-8157 (RMB), 2014 WL 345270 (S.D.N.Y. Jan. 31, 2014)....................................... 10

*M. Fabrikant & Sons, Inc. v. Long's Jewelers Ltd.*,
No. 08-CV-1982, 2008 WL 2596322 (S.D.N.Y. June 26, 2008) ......................................... 10, 11

*MBNA Am. Bank, N.A. v. Hill*,
436 F.3d 104 (2d Cir. 2006)....................................................................................................... 13

*McAllister Bros. v. A & S Transp. Co.*,
621 F.2d 519 (2d Cir. 1980)....................................................................................................... 14

*McCord as Tr. of Est. of Haniff v. Gov't Emps. Ins. Co.*,
No. 22-MC-3611 (MKB), 2023 WL 4209542 (E.D.N.Y. June 27, 2023)................................... 11

*Mehler v. Terminix Int'l Co. L.P.*,
205 F.3d 44 (2d Cir. 2000)..................................................................... 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)................................................................................... 12

*Nitel, Inc. v. Cerberus Bus. Fin., LLC*,
No. 21-CV-05996 (VEC), 2021 WL 5770933 (S.D.N.Y. Dec. 3, 2021)..................................... 9

*Northern Pipeline Const. Co. v. Marathon Pipeline Co.*,
458 U.S. 50 (1982)................................................................................... 6

*ResCap Liquidating Tr. v. RBC Mortg. Co.*,
No. 14-CV-4457 (AKH), 2014 WL 8103896 (S.D.N.Y. July 18, 2014)............................ 7, 8, 11

*Safra Sec., LLC v. Gonzalez*,
764 F. App'x 125 (2d Cir. 2019) ...................................................... 15

*Schwimmer v. Malinas*,
38 Misc. 3d 1220(A) (Sup. Ct. Kings Cnty. 2013) ...................................... 13

*Stern v. Marshall*,
564 U.S. 462 (2011).......................................................................... 5, 6, 8

*Sunbelt Beverage Corp. v. Goldring*,
205 F.3d 1324 (2d Cir. 2000).......................................................... 15

*Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld LLP*,
201 B.R. 635 (S.D.N.Y. 1996)................................................................ 7

*Whitehaven S.F., LLC v. Spangler*,
633 F. App'x 544 (2d Cir. 2015) ...................................................... 13

*Zeiler v. Deitsch*,
500 F.3d 157 (2d Cir. 2007)................................................................ 13

**Statutes**

9 U.S.C. § 2........................................................................................ 12

9 U.S.C. § 4........................................................................................ 12

28 U.S.C. § 157(b) .......................................................................... 6

28 U.S.C. § 157(c) .......................................................................... 8, 9

28 U.S.C. § 157(d) .......................................................................... 5

28 U.S.C. § 157(e) .......................................................................... 9

iv

## PRELIMINARY STATEMENT

Defendant Yoel Silberstein ("Defendant") respectfully submits this memorandum of law in support of his motion for entry of an order: (1) pursuant to 28 U.S.C. § 157(d), Rule 5011 of Federal Rules of Bankruptcy Procedure Rule (the "Bankruptcy Rules"), and Rule 5011-1 of the Local Bankruptcy Rules for the Southern District of New York, withdrawing the reference of this adversary proceeding from the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") to the United States District Court for the Southern District of New York; and (2) pursuant to 9 U.S.C. §§ 1 *et seq.*, compelling arbitration of the sole claim in plaintiff AYH Wind Down LLC's ("Plaintiff") complaint.

Plaintiff is an entity that was created in connection with the confirmed chapter 11 plan of All Year Holdings Limited (the "Debtor")—essentially to function as a liquidation trust—that purports to have received from the Debtor the right to prosecute certain causes of action against third parties for the benefit of the Debtor's creditors. Plaintiff's complaint in this adversary proceeding contains a single claim against Defendant for breach of a promissory note, which Defendant allegedly signed in favor of the Debtor and failed to repay at maturity years before the Debtor commenced its bankruptcy case in December 2021. Plaintiff's claim is rooted in state common law, not federal bankruptcy law, and seeks to require Defendant to litigate in the Bankruptcy Court despite that Defendant was not listed as a creditor, never filed a proof of claim, and did not otherwise participate in the Debtor's bankruptcy case. Under these circumstances, it is clear under well-established law that the Bankruptcy Court lacks the statutory and constitutional authority necessary to finally adjudicate Plaintiff's claim against Defendant, necessitating the withdrawal of the reference to promote judicial efficiency and prevent Plaintiff from forum shopping to Defendant's detriment.

What's more, the Debtor released Defendant from any obligations under the promissory note in October 2020 pursuant to a settlement of a dispute arising out of an earlier November 2015 agreement between Defendant and the Debtor, which contained a broad arbitration clause requiring that any and all disputes arising out of the parties' be resolved through religious arbitration with a specified beth din. Plaintiff, as the Debtor's assignee, is bound by the same arbitration obligations as the Debtor would have been absent any assignment. Accordingly, Plaintiff's claim is brought in violation of Defendant's rights under both the release and the underlying arbitration agreement.

For the reasons explained below, Defendant is entitled to an order not only withdrawing the reference in this adversary proceeding but also compelling arbitration of the claim against him in the contractually designated arbitral forum to which he and the Debtor—the party from which Plaintiff acquired its alleged right to bring the claim—agreed in their pre-bankruptcy agreement to resolve their disputes.

## **BACKGROUND**

### A.  The Chapter 11 Case

On December 14, 2021, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. Aloe Decl., Ex. F. The Debtor did not list Defendant as a creditor in its schedules of assets and liabilities filed in the Bankruptcy Court on December 28, 2021. Aloe Decl., Ex. H. Defendant never filed a proof of claim or other appeared or participated in the Debtor's bankruptcy case. Aloe Decl., Ex. L–M.

On January 31, 2023, the Bankruptcy Court entered an order confirming the Debtor's Third Amended Chapter 11 Plan of Reorganization (the "Plan"). Aloe Decl., Ex. J. Under section 10.1 of the Plan, the Debtor's rights to pursue "any and all claims and Causes of Action, whether known or unknown, contingent, liquidated or disputed, that the Debtor . . . may have against any third-parties" were assigned to Plaintiff, a newly formed entity created for purposes of implementing

the Plan, to prosecute for the benefit of certain unsecured creditors with claims classified in Class 4 under the Plan. Aloe Decl., Ex. J.

### B. Pre-Bankruptcy Agreements Between Defendant and the Debtor

Before its chapter 11 bankruptcy filing, the Debtor was a holding company that, through its subsidiary entities, focused on the development, construction, acquisition, leasing, and management of residential and commercial income producing properties in Brooklyn, New York. Aloe Decl., Ex. G at 1. Prior to January 4, 2021, Yoel Goldman ("Goldman") was the sole shareholder of the Debtor and individual with "day-to-day control" of the Debtor. Aloe Decl., Exs. G at 2, I at 1. Defendant dealt with Goldman in his capacity as the Debtor's principal and assisted Goldman in his efforts on behalf of the Debtor to acquire certain properties in Brooklyn and raise millions of dollars from investors to fund the Debtor's development projects. Aloe Decl., Ex. N.

On November 23, 2015, Defendant, for himself, and Goldman, for himself and on behalf of the Debtor and certain other entities, entered into an agreement memorializing Defendant's entitlement to receive specified payments and equity interests in certain properties for the assistance Defendant provided to Goldman and the Debtor (the "November 2015 Agreement"). Aloe Decl., Ex. N. Section 18 of the November 2015 Agreement contains a broad arbitration agreement that provides:

> For any question or doubt or dispute that shall arise between the parties, in all that concerns this agreement, or concerning any of the four properties mentioned above, both regarding fulfilling the essence of the agreement as well as regarding the payment of interest, as describe [*sic*] above, and also concerning the sale of the properties or any portion of them prior to renting out the apartments, or any other matter that both parties agree to being derived from the above properties, the parties shall turn to the mediator Rabbi Avraham Shlomo Ausch, or Rabbi Chaim Mordechai Shtesel, who are acceptable to both and who may facilitate a compromise between them; and if they are unable to agree on which of them to turn to, or if they shall be otherwise unable to turn to them, they shall adjudicate the matter before the rabbinical court (beis din) of the Hisachdus Harabonim; and the signing of this agreement shall in full effect be equal to signing an arbitration agreement before the rabbinical court of the Hisachdus Harabonim mentioned

above, and according to what is customary to sign at present before those rabbinical courts that allow for it to be full in effect according to the laws of arbitration.

Aloe Decl., Ex. N at YS000009–10.

On March 21, 2018, Defendant signed a promissory note in the amount of $3,350,000 in favor of the Debtor with a stated maturity date of March 30, 2019. Decl., Ex. B. The promissory note was executed in connection with the payments and equity interests owed to Defendant under the terms of the November 2015 Agreement. Aloe Decl., Ex. O at YS000016–17.

On October 1, 2020, to resolve an ongoing dispute concerning Defendant's demands that he receive the payments and equity interests owed to him under the November 2015 Agreement, the parties entered into an agreement that, among other things, provided that the Debtor would forgive the promissory note (the "October 2020 Agreement"). Aloe Decl., Ex. O at YS000016–17. The signature block for the October 2020 Agreement states that Mr. Goldman executed the document for himself and the Debtor. Aloe Decl., Ex. O at YS000017.

Consistent with the October 2020 Agreement, on October 2, 2020, the Debtor executed a Release of Obligations in Defendant's favor, which provided:

> The Lender agrees to discharge the Borrower from any claims, liabilities, and obligations under the loan made on 03/21/2018 in the amount of $3,350,000.00.

> The Lender agrees to Release all parties connected to the original loan agreement including, if any, co-borrowers, co-signers, and guarantors.

Aloe Decl., Ex. P at YS000020.

### C.  Procedural History in the Adversary Proceeding

On September 19, 2023, Plaintiff commenced the adversary proceeding against Defendant by filing a complaint alleging that Defendant breached a promissory note. Aloe Decl., Ex. A ("Compl.") ¶¶ 18–22. Plaintiff did not allege in the complaint the specific ground under 28 U.S.C. § 157(b)(2) that it contends supports its assertion that "[t]his is a core proceeding." Compl. ¶ 10.

On October 20, 2023, Defendant filed his answer to the complaint, denying the material allegations and interposing six affirmative defenses. Aloe Decl., Ex. D ("Answer") ¶¶ 12–28. Defendant also demanded a jury trial and, pursuant to Bankruptcy Rule 7008, stated that he did not consent to entry of final orders or judgments by the Bankruptcy Court. Answer ¶¶ 29–30.

On October 31, 2023, the Bankruptcy Court entered a Case Management and Scheduling Order, which set forth a schedule for completing fact and expert discovery. Aloe Decl., Ex. E. Except for the parties' exchange of initial disclosures on November 14, 2023, and Defendant responding to Plaintiff's document requests on January 18, 2023, the parties have not materially advanced the adversary proceeding. Neither party has taken any depositions or filed any dispositive motions. Aloe Decl. ¶¶ 19–20.

## **ARGUMENT**

### I.    **The Reference to the Bankruptcy Court Should Be Withdrawn for Cause**

Under 28 U.S.C. § 157(d), "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." Although 28 U.S.C. § 157(d) does not define "cause," the Second Circuit has established a widely adopted two-prong test: "A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn," and then proceed to "weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993); *see In re Residential Cap., LLC*, 527 B.R. 865, 871 (S.D.N.Y. 2014) (quoting *Orion*).

Since the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462 (2011), some courts have recognized that the first part of the *Orion* test must factor into its analysis whether, even if a

claim is statutorily defined as core, the bankruptcy court would have constitutional authority to enter a final judgment because "the question of whether the bankruptcy court may finally determine a proceeding or whether the bankruptcy court's proposals must be reviewed de novo by a district court is governed by Article III." *Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 530 (S.D.N.Y. 2012); *see also Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 464–67 (S.D.N.Y. 2011). However, as explained below, because the sole claim at issue in this adversary proceeding is unquestionably non-core, "this Court need not resolve the best way to apply *Stern* to a motion to withdraw the reference." *In re EMS Financial Services, LLC*, 491 B.R. 196, 203 (E.D.N.Y. 2013).

### A. The Adversary Proceeding is Non-Core The Bankruptcy Court Lacks Final Adjudicatory Authority

Pursuant to 28 U.S.C. § 157(b), a core proceeding "arising under title 11" or "arising in a case under title 11" is one "that clearly invoke[s] substantive rights created by federal bankruptcy law" or otherwise "would have no existence outside of the bankruptcy." 28 U.S.C. § 157(b)(1); *In re Robert Plan Corp.*, 777 F.3d 594, 596–97 (2d Cir. 2015) (quoting *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108–09 (2d Cir. 2006) and *Baker v. Simpson*, 613 F.3d 346, 350–51 (2d Cir. 2010)). In contrast, a proceeding is non-core if it "does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks federal bankruptcy jurisdiction." *DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 591 (S.D.N.Y. 2012). The core versus non-core distinction is vital to the withdrawal analysis because, as the Supreme Court held in *Northern Pipeline Const. Co. v. Marathon Pipeline Co.*, 458 U.S. 50 (1982), and reaffirmed in *Stern v. Marshall*, 564 U.S. 462 (2011), "Congress cannot constitutionally empower a non-Article III Bankruptcy Court to adjudicate, with finality, claims that are not within the core of the bankruptcy authority created in the Constitution." *In re Coudert Bros.*, No. 11-CV-4949 (PAE),

2011 WL 7678683, at *5 (S.D.N.Y. Nov. 23, 2011); *see In re Money Centers of Am., Inc.*, 579 B.R. 710, 713 (S.D.N.Y. 2016) ("The relevance of the core/non-core inquiry is that absent the consent of the parties, only Article III judges can enter final judgments in non-core proceedings. When a matter is non-core, and absent the consent of the parties, a bankruptcy judge must issue proposed findings of fact and conclusions of law that are reviewed de novo by the district court.").

Plaintiff's sole claim in this adversary proceeding alleges that Defendant breached a promissory note that allegedly was entered into in March 2018 and matured in March 2019—more than two years before the Debtor commenced the Bankruptcy Case on December 14, 2021. Compl. ¶¶ 12–22; Aloe Decl., Ex. B. Defendant was not listed a creditor in the Debtor's schedules, did not file any proof of claim, and did not otherwise participate in the Bankruptcy Case. Aloe Decl., Exs. H, L–M. Thus, this adversary proceeding presents a prepetition breach of contract claim against a third-party who has not filed a proof of claim and is foreign to the bankruptcy case.

It is well-established that a "breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core." *In re Orion Pictures Corp.*, 4 F.3d at 1102; *see also, e.g.*, *In re Iannacchino*, No. 15-CV-09408 (NSR), 2018 WL 1009279, at *3 (S.D.N.Y. Feb. 20, 2018) ("Pre-petition breach of contract claims asserted by a debtor against a party to the pre-petition contract, who has filed no claim with the bankruptcy court, are deemed non-core."); *ResCap Liquidating Tr. v. RBC Mortg. Co.*, No. 14-CV-4457 (AKH), 2014 WL 8103896, at *2 (S.D.N.Y. July 18, 2014) (holding that "state-law breach of contract and indemnification claims" are non-core and granting motion to withdraw the reference); *Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld LLP*, 201 B.R. 635, 639 (S.D.N.Y. 1996) (holding that "pre-petition breach of contract case is a non-core proceeding" where formation of the contract and alleged breach occurred prepetition); *In re Luis Elec. Contracting Corp.*, 165 B.R.

358, 362–65 (Bankr. E.D.N.Y. 1992) (holding that trustee's action to recover on promissory notes was non-core even though some of the promissory notes at issue matured post-petition). Additionally, the fact that a recovery in Plaintiff's favor might benefit the bankruptcy estate and impact creditors' recoveries does not transform this adversary proceeding from non-core to core. *See In re Orion Pictures Corp.*, 4 F.3d at 1102; *ResCap Liquidating Tr.*, 2014 WL 8103896, at *2; *In re Coudert Bros.*, 2011 WL 7678683, at *5; *In re Joseph DelGreco & Co., Inc.*, No. 10-CV-422 (NRB), 2011 WL 350281, at *3 (S.D.N.Y. Jan. 26, 2011); *1800Postcards, Inc. v. Morel*, 153 F. Supp. 2d 359, 367 n.51 (S.D.N.Y. 2001).

Even if Plaintiff's claim against Defendant could be considered statutorily core under 28 U.S.C. § 157(b)(2) (which it cannot), the Bankruptcy Court still would lack final adjudicatory authority. In *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014), the Supreme Court explained that "*Stern* made clear that some claims labeled by Congress as 'core' may not be adjudicated by a bankruptcy court in the manner designated by § 157(b)" and held that such claims should be treated as non-core under 28 U.S.C. § 157(c)(1)—i.e., "[t]he bankruptcy court should hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for de novo review and entry of judgment"—absent the parties' consent under 28 U.S.C. § 157(c)(2). *Exec. Benefits Ins. Agency*, 573 U.S. at 35–36. And in *Stern*, the Supreme Court reiterated its decision in *Northern Pipeline* that bankruptcy courts lack the constitutional jurisdiction to finally adjudicate a state law contract claim against a party "that was not otherwise part of the bankruptcy proceedings." *Stern*, 564 U.S. at 485. Accordingly, in this adversary proceeding, which alleges a single claim alleging breach of a promissory note under state law, whether the proceeding is statutorily core or non-core under 28 U.S.C. § 157 does not change that the Bankruptcy Court cannot finally adjudicate Plaintiff's claim absent Defendant's consent.

**B. Defendant Does Not Consent to Final Adjudication by the Bankruptcy Court**

Under 28 U.S.C. § 157(c)(2), a bankruptcy court may enter final orders and judgments with respect to non-core proceedings if the parties consent. Defendant does not consent to final adjudication of this matter by the Bankruptcy Court. Answer ¶ 30. As explained above, defendant did not file a claim in the Bankruptcy Case and has in no way submitted himself to the jurisdiction of the Bankruptcy Court. Aloe Decl., Exs. L–M. Moreover, Defendant has demanded a trial by jury in this adversary proceeding, Answer ¶ 29, which can only occur outside of the Bankruptcy Court because of his lack of consent. *See* 28 U.S.C. § 157(e) ("If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties."); *Granfinanciera S.A. v. Nordberg*, 492 U.S. 33 (1989) (holding that the Seventh Amendment entitles defendants who have not filed claims against the bankruptcy estate to a jury trial even in "core" proceedings).

**C. The Remaining *Orion* Factors Favor Withdrawal**

Because this adversary proceeding is non-core and the Bankruptcy Court lacks final adjudicative authority, "[i]n order to deny the motion to withdraw the reference, the remaining factors would have to weigh heavily in support of hearing this dispute in bankruptcy court." *Nitel, Inc. v. Cerberus Bus. Fin., LLC*, No. 21-CV-05996 (VEC), 2021 WL 5770933, at *2 (S.D.N.Y. Dec. 3, 2021). As noted above, the remaining *Orion* factors include judicial efficiency, cost and delay, and uniformity of bankruptcy administration, and the prevention of forum shopping. Each of these factors weighs in favor of granting Defendant's motion to withdraw the reference.

First, withdrawing the reference in this adversary proceeding now will both promote judicial efficiency and prevent the parties from incurring unnecessary cost and delay by eliminating the need for the Bankruptcy Court and this Court to separately review the same

underlying facts and legal arguments. Indeed, "if the motion to withdraw the reference is not granted, this Court will still be required to review *de novo* any findings made by the bankruptcy court regarding the Adversary Proceeding." *In re EMS Fin. Servs., LLC*, 491 B.R. 196, 205 (E.D.N.Y. 2013). "Such duplicate reviews of the contracts and facts are costly and time-consuming, and unnecessarily expend judicial resources." *DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 593 (S.D.N.Y. 2012). Especially where, as here, the bankruptcy court cannot conduct the required jury trial, "the efficiency question reduces to whether judicial economy is served by permitting the bankruptcy court to oversee discovery and other pre-trial proceedings." *In re Joseph DelGreco & Co., Inc.*, 2011 WL 350281, at *5 *see M. Fabrikant & Sons, Inc. v. Long's Jewelers Ltd.*, No. 08-CV-1982, 2008 WL 2596322, at *4 (S.D.N.Y. June 26, 2008). ("Removal of the reference is efficient because [Defendant] demanded a jury trial and a trial in this case would ultimately occur in the district court."). Utilizing the Bankruptcy Court to oversee pretrial matters would not promote judicial efficiency because "it is a waste of judicial resources for a court of specialized bankruptcy knowledge to administer a case that does not require application of that knowledge." *In re Money Centers of Am., Inc.*, 579 B.R. at 715.

Additionally, "because the Adversary Proceeding is still in its relatively early stages, withdrawal will not impose undue cost or delay on the parties." *LightSquared Inc. v. Deere & Co.*, No. 13-CV-8157 (RMB), 2014 WL 345270, at *6 (S.D.N.Y. Jan. 31, 2014). To date, the parties have filed their pleadings, exchanged limited document discovery, and participated in a single scheduling conference with the Bankruptcy Court. They have not taken any depositions, filed any dispositive motions, or invested any meaningful time or resources educating the Bankruptcy Court as to the relevant facts and legal issues that inform the adversary proceeding. Aloe Decl. ¶¶ 19–20. Accordingly, there is no risk that the parties' limited litigation efforts before the Bankruptcy

Court will have to be duplicated post-withdrawal of the reference, irrespective of whether the claim proceeds in this Court or in arbitration, as Defendant contends is required.

Second, "[s]ince the complaint raises non-core claims, there are no concerns about uniform administration of bankruptcy law, for the complaint involves state-law breaches of contract claims, not bankruptcy law in the least." *ResCap Liquidating Tr.*, 2014 WL 8103896, at *3; *see In re Joseph DelGreco & Co., Inc.*, 2011 WL 350281, at *5 ("[W]ithdrawing the reference would not undermine uniform administration of the law. This case involves state law claims, which arose prior to the bankruptcy filing, and which do not raise substantive issues of bankruptcy law."); *M. Fabrikant & Sons, Inc.*, 2008 WL 2596322, at *4 ("Withdrawing the reference would not hamper uniform administration of the bankruptcy code because this case is a "non-core" proceeding.").

Finally, the potential for forum shopping typically only arises where a party moves to withdraw the reference "after the bankruptcy judge made intermittent findings adverse to the moving party." *In re The VWE Grp., Inc.*, 359 B.R. 441, 447 (S.D.N.Y. 2007). That concern is not present here because the Bankruptcy Cort so far has not made any findings or rulings, and there are no pending motions that would require the Bankruptcy Court to do so in the near future.

District courts in the Second Circuit have repeatedly concluded that a party seeking to enforce its right to have a non-core proceeding determined by the district court or in a contractually designated forum is not engaging in forum shopping such that consideration of this factor weighs against granting their motion to withdraw the reference. *See, e.g.*, *McCord as Tr. of Est. of Haniff v. Gov't Emps. Ins. Co.*, No. 22-MC-3611 (MKB), 2023 WL 4209542, at *7 (E.D.N.Y. June 27, 2023) ("[B]ecause the Bankruptcy Court cannot enter the final judgment in this case, withdrawal of the reference does not promote forum shopping, as the case will eventually come before a district court."); *In re Residential Cap., LLC*, 527 B.R. at 872 ("It is apparent to the Court that

ResCap favors Judge Glenn's case management approach in the circumstances of this case, and allowing ResCap to avoid litigating this action in Minnesota would condone tactical forum shopping."); *In re Joseph DelGreco & Co., Inc.*, 2011 WL 350281, at *5 ("[T]here is no evidence that DLA Piper's motion is an attempt to engage in forum shopping. Here, DLA Piper has a right to a jury trial on the malpractice claims, and absent consent by DLA Piper to a trial in bankruptcy court, the parties have no choice but to try the case in this Court or in New York state court.").

Here, there is no question that Plaintiff's sole claim against Defendant is non-core, cannot be finally adjudicated in the Bankruptcy Court, and that Defendant would be entitled to a jury trial in this Court. And, as explained below, it is equally clear that Defendant is entitled to compel arbitration of Plaintiff's claim based on a prepetition agreement pursuant to which the Debtor was a party. Accordingly, granting Defendant's motion to withdraw the reference in this adversary will prevent forum shopping by ending Plaintiff's attempt to prosecute its claim in the Bankruptcy Court in violation of Defendant's constitution, statutory, and contractual rights.

## II.     The Court Should Compel Arbitration of Plaintiff's Claim

United States courts consistently recognize and enforce the "liberal federal policy favoring arbitration agreements," which been codified in the Federal Arbitration Act. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see* 9 U.S.C. §§ 1 *et seq.* Pursuant to 9 U.S.C. § 2, written arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." To enforce this policy, 9 U.S.C. § 4 provides that a party to a contract that requires arbitration may petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement."

The Federal Arbitration Act applies equally to claims brought in bankruptcy court as it does to claims brought in district court. Particularly where, as here, the claim brought in bankruptcy court is non-core, there is no impediment to granting a motion to compel arbitration where a valid

arbitration agreement that covers the dispute exists. *See MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006) ("Bankruptcy courts generally do not have discretion to refuse to compel arbitration of 'non-core' bankruptcy matters, or matters that are simply 'related to' bankruptcy cases. As to these matters, the presumption in favor of arbitration usually trumps the lesser interest of bankruptcy courts in adjudicating non-core proceedings."). Additionally, federal and state courts in New York recognize dispute resolution achieved through beth dins as valid arbitration proceedings. *See, e.g.*, *Zeiler v. Deitsch*, 500 F.3d 157, 168 (2d Cir. 2007) (affirming confirmation of arbitration awards rendered by beth din under the Federal Arbitration Act); *Schwimmer v. Malinas*, 38 Misc. 3d 1220(A) (Sup. Ct. Kings Cnty. 2013) ("New York courts have confirmed that an agreement to proceed before a Beth Din is treated as an agreement to arbitrate.").

In assessing a motion under 9 U.S.C. § 4 , "[a] court must compel arbitration if it determines that a contractually valid arbitration agreement exists under the relevant state law and that the parties' dispute falls within the scope of that agreement." *Whitehaven S.F., LLC v. Spangler*, 633 F. App'x 544, 545–46 (2d Cir. 2015). As explained below, the elements required for Defendant to prevail on his motion to compel arbitration under 9 U.S.C. § 4 are easily satisfied here because there is no question that a valid arbitration agreement exists and that the scope of the arbitration agreement covers Plaintiff's claim against Defendant in this adversary proceeding.

### A. Defendant and the Debtor Entered Into a Valid Arbitration Agreement That Is Binding on Plaintiff as the Debtor's Assignee

The opening paragraph of the November 2015 Agreement containing the arbitration clause provides that Mr. Goldman entered into the agreement "on his own behalf and on behalf of" certain entities, including the Debtor. Aloe Decl., Ex. N at YS000004. At the time the Debtor and Defendant entered into the November 2015 Agreement, Mr. Goldman had authority to bind the Debtor as its sole shareholder the individual who maintained "day-to-day control." Aloe Decl., Ex.

I at 1. Accordingly, Plaintiff cannot dispute the existence of an arbitration agreement between the Debtor and Defendant. Rather, the issue turns on whether that arbitration agreement is enforceable by Defendant against Plaintiff as a non-signatory to the November 2015 Agreement.

It is established law in the Second Circuit that "a party may be bound by an agreement to arbitrate even in the absence of a signature" and that "ordinary principles of contract and agency determine which parties are bound by an agreement to arbitrate." *McAllister Bros. v. A & S Transp. Co.*, 621 F.2d 519, 524 (2d Cir. 1980). Among the relevant principles of contract law is the "elementary ancient law that an assignee never stands in any better position than his assignor. He is subject to all the equities and burdens which attach to the property assigned because he receives no more and can do no more than his assignor." *Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 126 (1975). In the arbitration context, in particular, an assignee is bound by any arbitration obligations that exist in connection with the rights that it was assigned. *See Blum's, Inc. v. Ferro Union Corp.*, 36 A.D.2d 584, 584 (1st Dep't), *aff'd sub nom. Blum's Inc v. Ferro Union Corp*, 29 N.Y.2d 689 (1971) ("An assignee who has taken over the rights of an assignor is bound to an arbitration clause in the assigned contract.").

Plaintiff would have no claim to allege against Defendant but for its receipt of an assignment of the Debtor's rights to pursue certain causes of action under the terms of the Plan. By virtue of the assignment, Plaintiff stepped into the Debtor's shoes with respect to the cause of action alleged against Defendant in this adversary proceeding and is subject to the arbitration obligations attendant to that cause of action. *See In re Cont'l Broker-Dealer Corp.*, 368 B.R. 109, 112 n.5 (Bankr. E.D.N.Y. 2007) ("The Trustee is the legal representative of the bankruptcy estate. As such he steps into the shoes of the Debtor. Thus, if the Debtor could be compelled to arbitrate, so too can the Trustee be compelled."). Accordingly, Defendant can enforce the arbitration

provision in the November 2015 agreement against Plaintiff post-assignment the same as he could have enforced against the Debtor had the assignment not occurred.

## B. The Arbitration Agreement Is Broad and Covers the Sole Claim Alleged in Plaintiff's Complaint

"When asking whether a dispute comes within the scope of an arbitration agreement, courts must apply a 'presumption in favor of arbitrability.'" *Fantastic Indus., Inc. v. Kryman*, No. 20-CV-2402 (ERK) (RER), 2021 WL 2809979, at *5 (E.D.N.Y. July 6, 2021), *aff'd*, No. 21-1919, 2022 WL 2186951 (2d Cir. June 17, 2022) (quoting *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019)). "Under these principles, an order to arbitrate 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Safra Sec., LLC v. Gonzalez*, 764 F. App'x 125, 126 (2d Cir. 2019) (quoting at *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *see Sunbelt Beverage Corp. v. Goldring*, 205 F.3d 1324 (2d Cir. 2000) ("A contract's broad arbitration clause creates a presumption in favor of arbitrability.").

As noted above, section 18 of the November 2015 Agreement provides that "any question or doubt or dispute that shall arise between the parties, in all that concerns this agreement, or concerning any of the four properties mentioned above, both regarding fulfilling the essence of the agreement as well as regarding the payment of interest, as describe [*sic*] above, and also concerning the sale of the properties or any portion of them prior to renting out the apartments, or any other matter that both parties agree to being derived from the above properties . . . shall [be] adjudicate[d] . . . before the rabbinical court (beis din) of the Hisachdus Harabonim; and the signing of this agreement shall in full effect be equal to signing an arbitration agreement before the rabbinical court of the Hisachdus Harabonim mentioned above, and according to what is customary to sign

at present before those rabbinical courts that allow for it to be full in effect according to the laws of arbitration." Aloe Decl., Ex. N at YS000009.

The scope-defining language of this arbitration provision—i.e., "any question or doubt or dispute that shall arise between the parties, in all that concerns this agreement" etc.—typifies the type of language that the Second Circuit views as creating a broad arbitration agreement. *See, e.g.*, *ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 26 (2d Cir. 2002) (classifying as broad the phrase "any dispute that shall arise between the parties hereto with reference to the interpretation of this Agreement or their rights with respect to any transaction involved"); *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (holding that a clause "submitting to arbitration 'any claim or controversy arising out of or relating to the agreement,' is the paradigm of a broad clause"); *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000) (describing clause that "provide[d] for arbitration of 'any controversy or claim between the parties arising out of or relating to' the Agreement" as "a classically broad one").

Based on the explicitly broad language of section 18 of the November 2015 Agreement, it certainly cannot be said that the arbitration clause is not susceptible to an interpretation that its scope covers the breach of promissory note claim that Plaintiff has alleged against Defendant in this adversary proceeding. Indeed, Plaintiff's attempt to enforce a payment obligation that the Debtor explicitly released in consideration of Defendant foregoing his valuable rights under the November 2015 agreement falls squarely within the arbitration agreement's broad scope. Accordingly, Plaintiff cannot overcome presumption in favor of arbitrability, and the Court must grant Defendant's motion to compel arbitration.

## **CONCLUSION**

For these reasons, the Court should withdraw the reference in this adversary proceeding and compel Plaintiff to arbitrate its claim against Defendant.

Dated: New York, New York
February 1, 2024

By:     */s/ Paul H. Aloe*
Paul H. Aloe
David N. Saponara
KUDMAN TRACHTEN ALOE POSNER LLP
488 Madison Avenue, 23rd Floor
New York, New York 10022
Tel: (212) 868-1010
paloe@kudmanlaw.com
dsaponara@kudmanlaw.com

*Attorneys for Defendant Yoel Silberstein*