# EXHIBIT A

CHAPMAN AND CUTLER LLP
1270 Avenue of the Americas
New York, New York 10020
Telephone: (212) 655-6000
Michael Friedman
David T. B. Audley
Eric S. Silvestri

*Counsel to AYH Wind Down LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
:
In re:                                              :      Chapter 11
:
**ALL YEAR HOLDINGS LIMITED,**                      :      Case No. 21-12051 (MG)
:
Debtor.                                     :
:
:
---------------------------------------------------------------X
**AYH WIND DOWN LLC**, through Ofer Tzur and        :
Amir Flamer, solely in their joint capacity as      :
Claims Administrator                                :
:
Plaintiff,                                  :
:
YOEL SILBERSTEIN,                                   :      Adversary No. 23-01180-mg
:
Defendant.                                  :
:
---------------------------------------------------------------X

**[PROPOSED] AMENDED ADVERSARY COMPLAINT**

AYH Wind Down LLC ("**Wind-Down Co**"), through Ofer Tzur and Amir Flamer jointly as Claims Administrator, respectfully shows and alleges as follows:

**PRELIMINARY STATEMENT**

Following confirmation of the *Third Amended Chapter 11 Plan of Reorganization of All Year Holdings Limited* [ECF No. 289] (the "**Plan**"), and pursuant to the *Findings of Fact,*

*Conclusions of Law, and Order Confirming Third Amended Chapter 11 Plan of Reorganization of All Year Holdings Limited* [ECF No. 352] (the **"Confirmation Order"**), certain of All Year Holdings Limited's (the **"Debtor")** claims vested with Wind-Down Co. The Claims Administrator (as defined below) is vested with power and authority to pursue those claims on behalf of Wind-Down Co. This lawsuit is one such claim, specifically a breach of promissory note action.

**PARTIES, JURISDICTION, AND VENUE**

1.   The Plaintiff in this matter is Wind-Down Co, which, as alleged further below, possesses certain of the Debtor's claims following reorganization under the Plan.

2.   This claim is brought on behalf of Wind-Down Co by Ofer Tzur and Amir Flamer solely in their joint capacity as Claims Administrator on behalf of Wind-Down Co (the **"Claims Administrator"**) pursuant to the Plan and that certain Plan Administration Agreement (the **"Plan Administration Agreement")**.

3.   Under the Plan Administration Agreement, which was executed in conjunction with the effectiveness of the Plan, Ofer Tzur and Amir Flamer were jointly appointed Claims Administrator. Specifically, the Plan Administration Agreement states:

> The Administrators hereby (a) accept their respective appointments as the Plan Administrator and the Claims Administrator as of the Effective Date, and (b) agree to observe and perform all duties and obligations imposed upon each of the Administrators under this Agreement, the Plan and the Confirmation Order, and other orders of the Bankruptcy Court as made expressly applicable to the Plan Administrator and the Claims Administrator, as applicable, after notice to the Plan Administrator or the Claims Administrator, as applicable, and a hearing thereon, and applicable law.

4.   The Plan Administration Agreement further vests in the Claims Administrator complete authority to "control and exercise authority over the Avoidance Actions and Causes of

Action vested in Wind-Down Co pursuant to the Plan, and over the litigation, management and disposition thereof."

5.     The Plan implements a transaction between the Debtor and Paragraph Partners LLC (the "**Sponsor**"), pursuant to that certain Investment Agreement dated March 11, 2022, as amended (the "**Investment Agreement**").  Under the Investment Agreement, the Sponsor acquired the Transferred Entities (as defined in the Investment Agreement) but left behind all Excluded Assets (as defined in the Confirmation Order), which instead vested in Wind-Down Co on the Effective Date to be administered for the benefit of creditors by the Plan Administrator.[1]

6.     Under Section 1.42 of the Plan, those Excluded Assets included:

> (b) any and all claims and Causes of Action, whether known or unknown, contingent, liquidated or disputed, that the Debtor, the Noteholders, or the Notes Trustee **may have against any third-parties**, including, but not limited to, any current or prior officer, director, advisor, representative, consultant, or shareholder of the Debtor (subject to the releases provided in Section 7.02 of the Plan Investment Agreement), other than any claims and Causes of Action that the Debtor may have with respect to whether or not Yoel Goldman or Tzipporah Goldman have any ownership interests in any of the Transferred Entities (as defined in the Plan Investment Agreement), which shall be retained by the Reorganized Debtor and the Reorganized Debtor shall be authorized to assert any and all claims arising under any applicable law to recover any properties or property interests listed on the Schedule of Transferred Entities.

*See* Plan § 1.42 (emphasis added).

7.     Accordingly, on the Effective Date of the Plan, the Debtor's claims against third parties, with one narrow exception not relevant to this matter, became the property of Wind-Down Co, as administered by the Claims Administrator.

---

[1] "Plan Administrator" as defined in the Plan includes the Claims Administrator.  *See* Plan § 1.74.

8. Defendant Yoel Silberstein ("**Mr. Silberstein**" or the **"Defendant"**) is an individual who, upon information and belief, resides in this District.

9. This is an adversary proceeding brought pursuant to Federal Rule of Bankruptcy Procedure 7001(1).

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Amended Standing Order of Reference M-431, dated January 31, 2023 (Preska, C.J.) and the Court's retention of jurisdiction pursuant to Section 11.1(i) of the Plan and paragraph 27 of the Confirmation Order.

11. Venue before the Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**FACTUAL ALLEGATIONS**

12. On March 21, 2018, Mr. Silberstein executed a promissory note in the principal amount of $3,350,000 (the "**Note**") in favor of Debtor. A true and correct copy of the Note is attached hereto as Exhibit A.

13. On or about March 21, 2018, and pursuant to the Note, the Debtor distributed $3,350,000 to Mr. Silberstein or an entity he controlled.

14. By its terms, the Note matured on March 30, 2019, with interest computed at an annualized rate of sixteen percent. *See* Ex. A.

15. On March 30, 2022, Debtor, through its attorneys, issued written demand to Mr. Silberstein that he remit the full amount owed under the Note to the Debtor. A true and correct copy of that demand letter is attached hereto as Exhibit B.

16. As of the March 30, 2022 demand, the amount of debt owed was calculated as $5,538,666.67, consisting of $3,350,000 of outstanding principal and $2,188,666.67 in outstanding interest. *See* Ex. B.

17. Interest has continued to accrue since the March 30, 2022 demand, and, as of September 7, 2023, the amount owed under the Note is no less than $6,321,822.22, consisting of $3,350,000 of outstanding principal and $2,971,822.22 in outstanding interest.

### COUNT I – BREACH OF PROMISSORY NOTE

18. For paragraph 18 of Count I of its Complaint, Wind-Down Co, through the Claims Administrator, incorporates herein by reference paragraphs 1-17 as above though fully set forth herein.

19. The Note is a valid and existing contract duly executed by the Defendant, Mr. Silberstein.

20. The Note contained an unequivocal and unconditional promise by Mr. Silberstein to repay the principal and interest amounts on or before the maturity date of March 30, 2019. *See* Ex. A.

21. Pursuant to the unequivocal terms of the Note, Mr. Silberstein waived any and all requirements of "presentment, notice of dishonor, protest and notice of protest." *See* Ex. A.

22. Mr. Silberstein has failed to pay the sums due under the Note.

### COUNT II – CONSTRUCTIVE FRAUDULENT TRANSFER UNDER 11 U.S.C. § 548(a)(1)(B) (RELEASE AND OCTOBER 1, 2020 AGREEMENT)

23. For paragraph 23 of Count II of its Complaint, Wind-Down Co, through the Claims Administrator, incorporates herein by reference paragraphs 1–22 as above though fully set forth herein.

24. On or about October 1, 2020, Yoel Goldman, then the sole shareholder of the Debtor, (*"Mr. Goldman"*) executed a hand-written document that purported to settle various

disputes between Mr. Goldman and Mr. Silberstein (the *"October 1, 2020 Agreement"*). A copy of an English translation of the October 1, 2020 Agreement is attached hereto as Exhibit 3.

25. According to the October 1, 2020 Agreement, Mr. Goldman executed it on his own behalf as well as on behalf of "AYH and company."

26. October 1, 2020 Agreement vaguely describes various disputes between Mr. Goldman and Mr. Silberstein, purporting to document that Mr. Goldman owed Mr. Silberstein approximately $6,000,000 while Mr. Silberstein owed All Year the balance on the Note.

27. According to the October 1, 2020 Agreement, the "more than six million dollars" allegedly owed to Mr. Silberstein arose out of work that he allegedly performed on three real estate projects known as "Albee," "Long Island City," and "The North Flats" as well as work Mr. Silberstein allegedly performed to resolve disputes between Mr. Goldman and individuals identified in the October 1, 2020 Agreement as "Moskowitz and Lichtenstein."

28. The acquisition by Mr. Goldman of all three of those real estate projects pre-dated the corporate existence of the Debtor.

29. Accordingly, any work Mr. Silberstein performed on those projects, represented services not for the Debtor, which did not exist at the time, but rather for Mr. Goldman personally.

30. Mr. Goldman and Mr. Silberstein were very close personal friends beginning when they first met in 1997 at yeshiva.

31. The two men studied together, saw each other every day, attended the same synagogue, got married around the same time and at the same place, and eventually became next door neighbors.

32. Their friendship expanded to a business relationship around 2005, about three years after Mr. Silberstein had gotten into the real estate business.

33. Mr. Goldman and Mr. Silberstein viewed their business relationship as entirely between each other on a personal level, and not between any corporate entities the two would later form as part of each's real estate dealings.

34. The two men would, over the course of their long professional relationship and personal friendship, freely exchange large sums of money at each other's request, with no written record keeping or written contracts documenting such transfers or transactions. Instead of observing those legal and business formalities, the relationship was based a mutual trust between the two.

35. Mr. Silberstein and Mr. Goldman never entered into written contracts under which Mr. Silberstein was to perform work on real estate projects in exchange for payment.

36. Mr. Silberstein and Mr. Goldman never entered into written contracts under which Mr. Silberstein was to mediate disputes in exchange for payment.

37. Under the October 1, 2020 Agreement, Mr. Goldman agreed to release Mr. Silberstein from his payment obligations under the Note, which at the time was a debt of approximately $4,159,139.72, in exchange for Mr. Silberstein releasing his claims for the "over six million dollars."

38. Shortly thereafter, on or about, October 2, 2020, Mr. Goldman then executed a document titled "Release of Obligations" (the *"Release"*). A copy of the Release is attached as Exhibit 4.

39. The Release purported to relieve Mr. Silberstein of his obligations under the Note, which, by October 2, 2020, were mature and over a year overdue.

40. These two documents, the October 1, 2020 Agreement and the Release, were a fraud for several reasons.

41. First, on October 1, 2020, Mr. Silberstein had no right to any money or claims against the Debtor.

42. The work Mr. Silberstein performed unfolded in parallel with the real estate projects, which took place over many years, and as such, under New York's Statute of Frauds, needed to have been reduced in writing to constitute valid and enforceable contractual obligations.

43. There is no written contract under which Mr. Silberstein was to be paid any amount of funds by the Debtor for any services.

44. There are no company ledgers or other book keeping, in any of Mr. Silberstein's, Mr. Goldman's, or the Debtor's possession, documenting or suggesting any such fee-for-service transaction.

45. There are no contemporaneous emails or other correspondence hinting at such an arrangement.

46. Thus, on October 1, 2020, Mr. Silberstein had no right to receive any funds, much less "over six million dollars" from the Debtor.

47. Moreover, Mr. Silberstein admits that, at the time the October 1, 2020 Agreement was signed his preference was to not to receive cash, but rather equity interests in the three real estate projects.

48. Accordingly, even assuming Mr. Silberstein had some basis to make demands of the Debtor, his compensation should not have been in the form of cash.

49. Second, to the extent there was any agreement, that contract would have been between Mr. Goldman and Mr. Silberstein personally, both because the Debtor literally did not exist at the time and indeed for the majority of the time that Mr. Silberstein alleges worked for Mr.

Goldman, and because the two men at all times conceived of their as business as being between two individuals.

50. Third, according to Mr. Silberstein, the only circumstances under which he was to repay the Note were if Mr. Goldman delivered to Mr. Silberstein equity interests in the three real estate projects.

51. The Note contains absolutely no mention of conditional repayment terms and instead contains an express prohibition on oral modifications.

52. Accordingly, and pursuant to New York General Obligation Law § 15-301, Mr. Silberstein's purported alleged conditional repayment terms on the Note are of no consequence and are legally null and void.

53. For all these reasons, both the Release and the October 1, 2020 Agreement represent Mr. Silberstein receiving millions of dollars in the form of relief from the Note while giving nothing, or, at a minimum, no reasonably equivalent value, in return because Mr. Silberstein had no legally enforceable claims against the Debtor.

54. If Mr. Silberstein had any claims at all, he had them against Mr. Goldman personally. However, relieving Mr. Goldman from his personal obligations by having the Debtor release a valid and enforceable obligation of over $4 million dollars is of no value to the Debtor itself. The only value, if any, was to Mr. Goldman.

55. The Note and the obligations of Mr. Silberstein to the Debtor arising therefrom, were the Debtor's property on October 1, 2020.

56. The October 1, 2020 Agreement and the Release occurred within two years of the Debtor's chapter 11 bankruptcy petition, which was filed on December 21, 2021.

57. On October 1, 2020 the Debtor was insolvent. Just two months after Mr. Goldman released Mr. Silberstein from a multi-million dollar matured loan obligation, on November 29, 2020, the Debtor announced that it was unable to make its regularly scheduled debt service payments on approximately $800 million in bonds issued on the Israeli stock exchange.

58. Because Mr. Silberstein had no actual, legally enforceable claims against the Debtor the October 1, 2020 Agreement and the Release represent a transaction under which Mr. Silberstein received millions of dollars in exchange for nothing. To the extent Mr. Silberstein had any actionable claims against the Debtor at that time, they did not reflect reasonably equivalent value when compared to being released from over $4 million in loan obligations.

## COUNT III – ACTUAL FRAUDULENT TRANSFER UNDER 11 U.S.C. § 548(a)(1)(A)
## (RELEASE AND OCTOBER 1, 2020 AGREEMENT)

59. For paragraph 59 of Count III of its Complaint, Wind-Down Co, through the Claims Administrator, incorporates herein by reference paragraphs 1–58 as above though fully set forth herein.

60. In addition to being a constructive fraudulent transfer under § 548, the October 1, 2020 Agreement and the Release represent a deliberate fraud on the Debtor's creditors with the intent to hinder, delay, or defraud them, including and especially the bondholders on the $800 million Israeli bonds.

61. Mr. Goldman, then the sole shareholder of the Debtor, knew on October 1, 2020 that the Debtor was on the precipice of defaulting on its bonds, a financial calamity that eventually resulted in the Debtor's bankruptcy proceeding a year later.

62. According to Mr. Goldman, the Debtor's hope for repaying those obligations were major transactions that had yet to close.

63. The Debtor was thus unable at the time to repay its debts as they became due when Mr. Goldman purported to release his friend Mr. Silberstein from the Note.

64. Mr. Goldman knew that the only way Mr. Silberstein would voluntarily repay the Note was if Mr. Goldman transferred certain equity interests in those three real estate projects to Mr. Silberstein.

65. But by this time Mr. Goldman was subject to much more financial scrutiny than he had experienced before, having by then borrowed close to a billion dollars through publicly-traded bonds on the Israeli stock exchange. Thus, Mr. Goldman was not in a position to give Mr. Silberstein what he wanted.

66. But Mr. Goldman could do the next best thing for his close personal friend: release him from the Note under false pretense by conflating the money he owed Mr. Silberstein personally with the Debtor's obligations in the October 1, 2020 Agreement.

67. Fully aware that the Debtor was careening toward a default on its loan obligations, and further aware that Mr. Silberstein had no actual claims against the Debtor itself, Mr. Goldman nonetheless sought to save his friend Mr. Silberstein by releasing him from his obligations to the Debtor under the October 1, 2020 Agreement and the Release.

68. Accordingly, the October 1, 2020 Agreement and the Release are an actual fraudulent transfer under 11 U.S.C. § 548(A)(1)(a).

### COUNT IV – FRAUDULENT TRANSFER UNDER N.Y. DEBTOR & CREDITOR LAW § 273
### (RELEASE AND OCTOBER 1, 2020 AGREEMENT)

69. For paragraph 69 of the alternative Count IV of its Complaint, Wind-Down Co, through the Claims Administrator, incorporates herein by reference paragraphs 1–68 as above though fully set forth herein.

70. Both the October 1, 2020 Agreement and the Release represented a transaction in which the Debtor did not receive reasonably equivalent value as it released Mr. Silberstein from a multi-million dollar loan obligation but received nothing in return because Mr. Silberstein had no actual, legally enforceable claims against the Debtor.

71. To the extent Mr. Silberstein had any actionable claims against the Debtor at that time, they did not reflect reasonably equivalent value when compared to being released from over what was then $4 million in loan obligations.

72. Both the October 1, 2020 Agreement and the Release additionally represented a fraud by which Mr. Goldman would use the Debtor's funds to pay off his personal debts to Mr. Silberstein through, as Mr. Silberstein described it, a "technical note," and then release the Note under false pretense.

73. By October 1, 2020, Mr. Goldman knew that a default on the Debtor's $800 million bond obligations was imminent.

74. Mr. Goldman knew that the default would likely lead to a situation in which he was no longer in a position to single-handedly control the enforcement of the Note against his close personal friend, Mr. Silberstein.

75. Mr. Goldman therefore decided to instead release Mr. Silberstein from the obligations under the Note thereby frustrating the efforts of the Debtor's creditors to use the proceeds from the repayment of the Note to satisfy the Debtor's obligations to those same creditors.

76. Accordingly both the October 1, 2020 Agreement and the Release represented a transaction entered with the actual intent to hinder, delay, or defraud the Debtor's creditors.

## IN THE ALTERNATIVE, COUNT V

## FRAUDULENT TRANSFER UNDER N.Y. DEBTOR & CREDITOR LAW § 273

## (THE NOTE)

77. For paragraph 77 of the alternative Count V of its Complaint, Wind-Down Co, through the Claims Administrator, incorporates herein by reference paragraphs 1–76 as above though fully set forth herein.

78. In the event the October 1, 2020 Agreement and the Release are not fraudulent transfers are found to be enforceable, then Wind-Down Co will assert a claim that the Note itself is a fraudulent transfer under New York law.

79. On or around March 2018, Mr. Silberstein was making demands to Mr. Goldman for payment.

80. Mr. Silberstein's position at the time was that Mr. Goldman owed him either a cash payment or the transfer of equity interests in the three subject real estate projects as payment for Mr. Silberstein's alleged work he performed in service of those projects.

81. The Note represented a fraud by which Mr. Goldman and Mr. Silberstein would funnel funds from the Debtor to Mr. Silberstein to pay off Mr. Goldman's debts to Mr. Silberstein.

82. Both men agreed with each other at the time Mr. Silberstein signed the Note that Mr. Silberstein would not ever repay the obligations.

83. Mr. Goldman structured this sham transaction as a promissory note to deliberately avoid drawing the scrutiny to Mr. Goldman's management of the Debtor and of the Debtor's then-existing or after-arising creditors.

84. The Note therefore represented a transaction in which the Debtor did not receive reasonably equivalent value as it distributed $3,350,000 to Mr. Silberstein but received nothing in

return beyond Mr. Silberstein's false promise to repay the Note, which Mr. Silberstein never intended to honor and which Mr. Goldman never intended to enforce.

85. Plaintiff only learned of this scheme involving the Note during the sworn depositions of Mr. Silberstein and Mr. Goldman in this lawsuit, which took place on February 19, 2024 and March 20, 2024 respectively.

86. Prior to those depositions, the Debtor (and as a result, Wind Down Co) had only the Note in its possession, which on its face is a valid and enforceable instrument. Neither the Debtor nor Wind Down Co was in possession of the October 1, 2020 Agreement, which was handwritten in Hebrew or the Release, both of which were produced in discovery in this matter.

87. Further, neither the Debtor nor Wind Down Co knew or had reason to know that the Note was a sham concocted by Mr. Goldman to funnel money to his friend to whom he owed money.

88. When the Debtor first made demand on Mr. Silberstein for repayment of the Note on March 20, 2022, Mr. Silberstein did not communicate with the Debtor or its counsel whatsoever. Instead, he spoke with Mr. Goldman who assured Mr. Silberstein at the time and repeatedly thereafter that the Note would not be enforced and that Mr. Goldman would "take care of it."

WHEREFORE, Plaintiff WIND-DOWN CO, through the Claims Administrator, prays that this Court enter judgment against Defendant YOEL SILBERSTEIN and requests as to Counts I–IV, or, in the alternative, Count V:

(a) damages not less than $6,631,511.93, as well as all additional past, present, and future accrued and accruing interest, and post-judgment interest;

(b) Determination that the October 1, 2020 Agreement and the Release are voidable and void under either or both N.Y. Debtor & Creditor Law § 273 and 11 U.S.C. § 548;

(c) an award in favor of Plaintiff for its attorneys' fees and costs;

(d) any further relief that this Court deems just and proper.

Dated: April [__], 2024
New York, New York

                                        CHAPMAN AND CUTLER LLP
1270 Avenue of the Americas
New York, New York 10020
Telephone: (212) 655-6000
Michael Friedman
David T. B. Audley
Eric S. Silvestri

*Counsel to the Plaintiff*