UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>ALL YEAR HOLDINGS LIMITED,<br><br>                       Debtor,<br><br>AYH WIND DOWN LLC, THROUGH OFER TZUR AND AMIR FLAMER, SOLELY IN THEIR JOINT CAPACITY AS CLAIMS ADMINISTRATOR,<br><br>                       Plaintiff,<br><br>                       v.<br><br>YOEL SILBERSTEIN,<br><br>                       Defendant. | Chapter 11<br><br>Case No. 24-00800-JHR<br>Bankruptcy Case No. 21-12051 (MG)<br><br><br><br><br><br><br><br><br><br>Adversary No. 23-01180-mg |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTION TO STAY ADVERSARY PROCEEDING PENDING DECISION ON DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE AND COMPEL ARBITRATION**

TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

    I.    Factual Background and Procedural History ................................................... 1

    II.   The Adversary Proceeding Thus Far ............................................................ 2

ARGUMENT ....................................................................................................................... 4

    I.    Defendant's Motion Is Not Properly Before This Court ................................ 5

    II.   Defendant Is Not Entitled to a Stay on the Merits .......................................... 8

        A.    Defendant Is Unlikely to Succeed on Motion to Withdraw the Reference . 8

        B.    Defendant Is Unlikely to Succeed on Motion to Compel Arbitration ....... 11

            i.    The 2015 Agreement's Arbitration Clause Does Not Apply .............. 11

            ii.   It Is Far From Clear That the Arbitration Provision Binds the Debtor 12

            iii.  Defendant Waived His Right to Arbitrate ........................................... 13

        C.    No Irreparable Harm to Defendant Without a Stay, but Prejudice to Plaintiff with One ...................................................................................... 14

        D.    The Public Interest Is Not Served by Meritless Delay .............................. 14

CONCLUSION ................................................................................................................ 15

TABLE OF AUTHORITIES

PAGE

**Cases**

*Aminoff & Co. LLC*, 2022 WL 987665 (S.D.N.Y. Apr. 1, 2022) ................................................. 13
*Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*, 2018 WL 6618389 (S.D.N.Y. Dec. 18, 2018) ........................................................................................................................................ 13
*GateGuard, Inc. v. Goldenberg*, 585 F. Supp. 3d 391 (S.D.N.Y. 2022) ....................................... 11
*In re City of Detroit, Mich.*, 498 B.R. 776 (Bankr. E.D. Mich. 2013) ........................................... 4
*In re Extended Stay, Inc.*, 466 B.R. 188 (S.D.N.Y. 2011) .............................................................. 9
*In re Kossoff PLLC*, No. 21-10699 (DSJ), 2024 WL 665913 (Bankr. S.D.N.Y. Feb. 16, 2024) .. 10
*In re Money Centers of Am. Inc.*, 579 B.R. 710 (S.D.N.Y. 2016) ................................................. 9
*In re Northwestern Institute of Psychiatry, Inc.*, 268 B.R. 79 (Bankr. E.D. Pa. 2001) ................ 14
*In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993) ........................................................... 9, 11
*In re Renewable Energy Dev. Corp.*, No. 2:12-CV-0771-RJS, 2014 WL 12740132 (D. Utah Jan. 10, 2014) ................................................................................................................................. 8
*In re Residential Cap., LLC*, 519 B.R. 890 (Bankr. S.D.N.Y. 2014) ............................. 5, 8, 9, 10
*In re Taub,* 470 B.R. 273 (E.D.N.Y. 2012) ............................................................................... 7, 8
*In re The Antioch Co.*, 435 B.R. 493 (Bankr. S.D. Ohio 2010) ..................................... 4, 10, 14
*Kramer v. Mahia*, No. 12-MC-794 DLI, 2013 WL 1629254 (E.D.N.Y. Apr. 15, 2013) .......... 9, 10
*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20 (2d Cir. 1995) ................. 14
*Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156 (2d Cir. 2010) ........................................................................................................................ 13
*Manigault v. Macy's East, LLC*, 318 F. App'x 6 (2d Cir. 2009) .................................................. 11
*Pryor v. Tromba*, No. 13-CV-676 JFB, 2014 WL 1355623 (E.D.N.Y. Apr. 7, 2014) .................... 9
*SEC v. Pension Fund of America,* No. 05-20863-CIV, 2005 WL 8156247 (S.D. Fla. Nov. 7, 2005) ............................................................................................................................................. 6
*Stern v. Marshall*, 564 U.S. 462 (2011) ........................................................................................ 9
*Strougo v. Barclays PLC*, 194 F. Supp. 3d 230 (S.D.N.Y. 2016). .............................................. 14

**Rules**

FED. R. BANKR. P. 5011 ..................................................................................................... 1, 4, 5, 8

## INTRODUCTION

On February 2, 2024, Defendant Yoel Silberstein (*"Defendant"*) filed his Motion to Withdraw the Reference and Compel Arbitration, hoping to derail what has been an efficient adversary proceeding administered by Chief Judge Glenn. That motion was fully briefed as of March 15, 2024, and remains pending. Since then, the adversary proceeding has proceeded on a normal discovery and summary judgment schedule.

Notably, Defendant did not once request that Chief Judge Glenn stay the adversary proceeding while this Court considers his motion. Absent a request for a stay, Rule of Bankruptcy Procedure 5011(c) is clear: the adversary case continues apace—and that is what has happened. Documents have been exchanged. Witnesses have been deposed. Pleadings have been amended. By early summer, discovery concluded, and on July 10, 2024, Chief Judge Glenn granted Plaintiff's request for leave to file a summary judgment motion, which is due on August 16, 2024.

Now, on the eve of summary judgment briefing, Defendant seeks a stay—but not from the Bankruptcy Court. Ignoring the clear instructions of Rule 5011 that such requests be presented first to the Bankruptcy Court, Defendant appeals instead to this Court. Not only is Defendant's motion procedurally improper, but it also fails on the merits. As thoroughly explained in Plaintiff's opposition to Defendant's motion to withdraw the reference, Chief Judge Glenn's deep knowledge and years of experience with the Debtor's bankruptcy proceeding, the Debtor's corporate structure and history, the stakeholders and cast of characters surrounding the Debtor's business, as well as the Debtor's Chapter 11 Plan, make Chief Judge Glenn's Courtroom the most efficient path forward for this proceeding. Defendant's request for a stay should be denied.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff previously summarized the history of the underlying Bankruptcy Case and the facts alleged in the Adversary Proceeding in its Memorandum of Law in Opposition to the Motion

to Withdraw the Bankruptcy Reference [ECF No. 7] and refers the Court to that discussion here.[1] To briefly revisit that history: Plaintiff is an entity created by the Debtor's confirmed Chapter 11 Plan and is vested with certain of the Debtor's claims against third parties. This adversary proceeding is one such claim: a breach of contract action against Defendant for failure to repay a $3,350,000 promissory note he issued to the Debtor in 2018.

On February 2, 2024, shortly before the Bankruptcy Court would order Defendant to sit for a deposition, Defendant filed a Motion to Withdraw the Reference and Compel Arbitration [ECF No. 4] (the *"Reference Motion"*). Plaintiff filed its Opposition to the Reference Motion [ECF No. 7] on March 6, 2024, and Defendant filed his Reply [ECF No. 10] on March 15, 2024. The Reference Motion is still pending before this Court.

## II. THE ADVERSARY PROCEEDING THUS FAR

Plaintiff initiated this Adversary Proceeding on September 19, 2023. Adv. Pro. ECF No. 1. Defendant filed his Answer on October 20, 2023. Adv. Pro. ECF No. 10. At the beginning of discovery, on November 14, 2023, Defendant served his Initial Disclosures, which contained photographs of two hand-written documents in Hebrew alongside English translations of those documents.

The first document is dated November 23, 2015 (the *"2015 Agreement"*). ECF No. 3-1 at p. 229–236.[2] Purportedly signed by both Defendant and Mr. Yoel Goldman, the then-sole shareholder of the Debtor, the 2015 Agreement concerns various claims and cross-claims among the two men related to three real estate development projects known colloquially as: "41-21 28th Street," "The North Flats," and "Albee Square." *Id.* at 229–230. Included in the 2015 Agreement,

---

[1] Unless otherwise stated, all capitalized terms used herein are the same as those in Plaintiff's Memorandum of Law in Opposition to the Motion to Withdraw the Bankruptcy Reference.

[2] The 2015 Agreement is included in the original briefing and affidavits in support of Defendant's Reference Motion. Rather than re-attach those documents, Plaintiff directs the court to those original ECF entries.

which predates the promissory note at the center of the adversary proceeding by nearly three years, is what appears to be an arbitration clause, which forms the basis for Defendant's Reference Motion. ECF No. 3-1 at p. 235.

The second document produced in Defendant's Initial Disclosures was an agreement purportedly signed by Defendant and Mr. Goldman dated October 1, 2020 (the *"2020 Agreement"*). ECF No. 3-1 at pp. 241–243. Notably, October 1, 2020, is only weeks from when the Debtor would announce it was unable to pay its obligations on $800 million in bonds, the major default that precipitated the Debtor's bankruptcy filing. The 2020 Agreement purportedly "released" Mr. Silberstein from his obligations under the Note. This "release" is Defendant's only defense against what is otherwise a clear contractual obligation to repay the Note.

During discovery, Defendant's deposition testimony revealed his close friendship and business relationship with Mr. Goldman. Defendant testified that the two men engineered a sham transaction in which the Note would never actually be repaid, and that the $3,350,000 that flowed to Defendant in March 2018 was a payoff for claims Defendant had against Goldman related to their real estate work in 2012 and 2013. ECF No. 8-1 (Excerpts from Defendant's Deposition). The "release" dated October 1, 2020, papered over the fraudulent transaction by purporting to excuse Defendant from obligations he never considered legitimate in the first place.

Defendant's testimony prompted Plaintiff to amend its Adversary Complaint, which it did on May 3, 2024. Adv. Pro. ECF No. 27. The Amended Adversary Complaint added three fraudulent transfer claims, each asserting theories under both New York state law and federal Bankruptcy Law attacking the "release" and the 2020 Agreement as fraudulent transfers for which the Debtor received nothing in exchange for releasing Defendant from the Note. Adv. Pro. ECF No. 27. Plaintiff then updated and served its Amended Initial Disclosures containing additional documents related to its fraudulent transfer claims.

On June 19, 2024, Plaintiff sought leave from the Bankruptcy Court to file a summary judgment motion on both its breach of contract claim and its fraudulent transfer claims. Adv. Pro. ECF Nos. 29–31. On July 10, 2024, the Bankruptcy Court granted Plaintiff's request and ordered all summary judgment briefing be completed by October 7, 2024. Adv. Pro. ECF No. 34. On July 19, 2024, Defendant filed the instant motion seeking a stay in this Court. This motion is the first time Defendant has ever sought a stay in this case, and he has never filed any motion for stay in the Bankruptcy Court.

**ARGUMENT**

At the outset, this Court should deny this motion because it violates the procedures set out in Rule 5011(c), which state that "[a] motion for a stay ordinarily shall be presented first to the bankruptcy judge." FED. R. BANKR. P. 5011(c). Defendant's explanation as to why he did not file the request before Chief Judge Glenn is, in his own words, to avoid "filing the stay motion in the Bankruptcy Court only for it to be denied and then refiled in this Court." There is surely no shortage of litigants who would prefer to skip past having their motions denied in the proper forum, but that is simply not how civil procedure works. Rather, to seek a stay directly from a District Court Rule 5011(c) requires a reasonable justification, and "I think I would lose in the Bankruptcy Court" does not qualify as one. Accordingly, this Court should deny the motion and direct Defendant to properly make his request to Chief Judge Glenn.

Even if the Court were to overlook Defendant's admitted forum shopping, his motion should fail on the merits. A stay pending a motion to withdraw the reference should be an exception and not a rule. *See In re City of Detroit, Mich.*, 498 B.R. 776, 780 (Bankr. E.D. Mich. 2013); *In re The Antioch Co.*, 435 B.R. 493, 496 (Bankr. S.D. Ohio 2010). Specifically, and as Defendant concedes, a stay should only be imposed when the movant can demonstrate "(a) the likelihood of prevailing on the merits; (b) that the [movant] will suffer irreparable harm if the stay

is denied; (c) that the [non-movant] will not be substantially harmed by the stay; and (d) that the public interest will be served by granting the stay." *In re Residential Cap., LLC*, 519 B.R. 890, 904 (Bankr. S.D.N.Y. 2014). Defendant agrees that this test applies equally whether the Court considers the arbitration motion or the motion to withdraw the reference as grounds for the stay. *See* Def's Brief in Supp. Mot. for Stay [ECF No. 14] (*"Def's Brief"*) pp. 10–15. For the reasons discussed both in Plaintiff's Opposition to the Motion to Withdraw the Reference and here below, Defendant is unlikely prevail on both his motion to withdraw the reference and his motion for to compel arbitration. While Defendant would suffer no prejudice by being forced to proceed with the adversary claim, a stay would prejudice the Plaintiff in the form of delayed adjudication and collection on claims that will be used to satisfy creditors, and the public interest is not served by needless delay in the progress of litigation.

I. **DEFENDANT'S MOTION IS NOT PROPERLY BEFORE THIS COURT**

Rule of Bankruptcy Procedure 5011(c) contains two important rules governing a motion to withdraw the reference. First, "[t]he filing of a motion for withdrawal of a case … shall not stay the administration of the case or any proceeding." Second, "[a] motion for a stay ordinarily shall be presented first to the bankruptcy judge," and if a movant seeks to deviate from that procedure, "[a] motion for a stay or relief from a stay filed in the district court shall state why it has not been presented to or obtained from the bankruptcy judge." FED. R. BANK. P. 5011(c). Thus, absent good cause, Defendant needed to request that Chief Judge Glenn stay the proceedings. His explanation for why he circumnavigated Chief Judge Glenn is at least honest if not cynical: he is sure his request would have been denied. *See* Def's Brief p. 10 ("[F]iling the stay motion on the Bankruptcy Court only for it to be denied and then refiled in this Court would force Defendant, Plaintiff, and the Bankruptcy Court to waste time and resources."). However, litigants are not free to ignore procedure because they think losing a motion in the initial, appropriate forum is

expensive and time consuming. Defendant's argument otherwise is without legal basis, and his cited authority is inapposite.

The case Defendant chiefly relies on, *SEC v. Pension Fund of America*, involved a District Court that had, upon motion from the Securities and Exchange Commission, issued orders freezing the assets of and enjoining certain defendants who then filed for bankruptcy. No. 05-20863-CIV, 2005 WL 8156247, at *1 (S.D. Fla. Nov. 7, 2005). The SEC sought relief from the automatic stay to continue to execute on the defendant-debtors' property, which was granted by the Bankruptcy Court, but in the interim the defendant-debtors' bankruptcy trustee sought to dispose of certain property the District Court had previously frozen. *Id.* Although the SEC quickly moved to withdraw the reference and have the bankruptcy proceeding dismissed, a timing issue arose because the Bankruptcy Court was set to potentially rule on the trustee's proposed sale before the District Court would have a chance to rule. *Id.* Thus, there simply was not time to first file a stay motion in the Bankruptcy Court because in the event the Bankruptcy Court denied that motion, it would risk "depriv[ing] this [District Court] of the ability to fully adjudicate the … motions before it." *Id.*

The critical distinction between *Pension Fund* and this case is that *Pension Fund* dealt with a legitimate timing problem that posed a real threat to a District Court's exercise of injunctive authority. By contrast, Defendant's "problem" is he thinks that the Bankruptcy Court would deny his motion and he does not want to have to draft summary judgment briefing. However, unlike in *Pension Fund*, Defendant will suffer no prejudice if he is forced to comply with normal procedure. Plaintiff's summary judgment motion will not be fully briefed until October 7, 2024, and Chief Judge Glenn has previewed for the parties that a hearing on that motion would, at the earliest, take place a few weeks later. Chief Judge Glenn's proposed findings of fact and conclusions of law would not follow for at least a few more weeks, if not a month or more, and even then may not

constitute a final adjudication of the adversary proceeding. Thus, the parties realistically have from now until at least November 2024 in which the Bankruptcy Court could consider Defendant's motion for stay that he rushed to file in this Court. Chief Judge Glenn has proven time and again in these proceedings that he is able to swiftly and efficiently deal with straightforward motions such as a request for a stay—often considering and disposing with such requests through letter briefing and judicial conferences. Even in the unlikely event that the Bankruptcy Court did not address Defendant's request for a stay until September 16, 2024, when Defendant's responsive brief is due, Defendant is not prejudiced from briefing summary judgment as that briefing would simply transition to the District Court in the event the motion to withdraw the reference were granted.

Rather than *Pension Fund*, this case is much more analogous to *In re Taub*, in which a debtor sought to stay certain bankruptcy orders pending appeal. 470 B.R. 273, 276 (E.D.N.Y. 2012). In that case, as here, the Rules of Bankruptcy Procedure provided that such stay requests "must ordinarily be presented to the Bankruptcy Judge" absent reasonable explanation. *Id.* In *Taub*, the debtor offered justifications that mirror Defendant's, all of which were rejected. Specifically, the debtor in *Taub* argued that the need for a stay was "urgent" because the Bankruptcy Court had approved an imminent sale of real property. *Id.* However, the debtor waited seven weeks after the Bankruptcy Court had issued its sale orders before she sought a stay. *Id.* The District Court explained that "[t]he Debtor cannot rely on an 'urgency' argument because any emergency now existing is the product of her own doing." *Id.* Here, Defendant waited longer than seven weeks. He waited for **five months** after he filed the Reference Motion before he filed his request for a stay. The Court should follow *Taub*'s example and reject Defendant's manufactured urgency.

Defendant is motivated not out of concern for judicial efficiency but by a desire to have a judge other than Chief Judge Glenn administer this adversary proceeding. As other District Courts have held, such motivations are improper and justify denying motions for a stay on that basis. *In re Taub*, 470 B.R. 273 (E.D.N.Y. 2012) (concluding district court lacked jurisdiction over debtor's motion to stay during the pendency of an appeal to district court because debtor's stay request bypassed the bankruptcy court); *In re Renewable Energy Dev. Corp.*, No. 2:12-CV-0771-RJS, 2014 WL 12740132, at *2 (D. Utah Jan. 10, 2014) ("The Movants' attempt to bypass the bankruptcy court just seven days prior to a second hearing on a motion pending since November 2011 weighs against this court issuing a stay."). Defendant's motion should therefore be denied for the straightforward reason that it impermissibly violates procedures set out in Rule 5011(c) to bring such motions to the Bankruptcy Court.

## II. DEFENDANT IS NOT ENTITLED TO A STAY ON THE MERITS

Apart from its procedural flaws and admitted forum shopping, Defendant's request for a stay fails on the merits. A stay of adversary proceedings should only be imposed pending a motion to withdraw the reference when the movant can demonstrate "(a) the likelihood of prevailing on the merits; (b) that the [movant] will suffer irreparable harm if the stay is denied; (c) that the [non-movant] will not be substantially harmed by the stay; and (d) that the public interest will be served by granting the stay." *In re Residential Cap., LLC*, 519 B.R. 890, 904 (Bankr. S.D.N.Y. 2014). Here, Defendant cannot satisfy even one prong of this test.

### A. Defendant Is Unlikely to Succeed on Motion to Withdraw the Reference

Defendant hinges the success of his Reference Motion on his characterization of this adversary proceeding as non-core and on the Bankruptcy Court's alleged lack of authority to finally adjudicated these claims. *See* Def's Brief p. 13. However, the core/non-core distinction is the beginning, not the end of the inquiry.

After determining if the claims are core or non-core, the District Court should "weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other factors." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993); *see also In re Residential Cap., LLC*, 527 B.R. 865, 871 (S.D.N.Y. 2014) (quoting *Orion*). This analysis is unaltered even if the Bankruptcy Court would lack the final adjudicatory authority. *See Stern v. Marshall*, 564 U.S. 462 (2011); *In re Money Centers of Am. Inc.*, 579 B.R. 710, 713 (S.D.N.Y. 2016). Any difficulties resulting from the additional procedural step of the Bankruptcy Court submitting findings of fact and conclusions of law are outweighed against the advantages and efficiencies inherent in keeping this matter with a Bankruptcy Court that is intimately familiar with the history of the Debtor's operations, the design and implementation of the Plan, and the identity and conduct of the stakeholders. *See, e.g., Kramer v. Mahia*, No. 12-MC-794 DLI, 2013 WL 1629254, at *5 (E.D.N.Y. Apr. 15, 2013) ("[I]t would be more efficient for the Bankruptcy Court to propose findings of fact and conclusions of law in the first instance than withdraw the reference at this stage."); *Pryor v. Tromba*, No. 13-CV-676 JFB, 2014 WL 1355623, at *7 (E.D.N.Y. Apr. 7, 2014) (same). Nor does the presence of a jury demand require withdrawal of the reference. As the Eastern District of New York has explained, "A motion for withdrawal of the reference will not be granted simply because of a party's demand for a jury trial[,] without consideration of how far the litigation has progressed[,] because such decision would run counter to the court's interest in judicial economy." *Id.* at *8 (citing *In re Extended Stay, Inc.*, 466 B.R. 188, 198 (S.D.N.Y. 2011)). *Orion* also instructs courts considering a motion to withdraw the reference to "weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Orion*, 4 F.3d at 1101.

District Courts routinely decline to withdraw the reference even when a Bankruptcy Court is asked to adjudicate non-core claims. *See, e.g.*, *In re Kossoff PLLC*, No. 21-10699 (DSJ), 2024 WL 665913, at *4 (Bankr. S.D.N.Y. Feb. 16, 2024) ("[T]he bankruptcy court is not divested of case management authority, as is routinely exercised by Article I magistrate judges in district court, as well as by bankruptcy judges even in cases where the bankruptcy court cannot enter a final judgment."); *Kramer v. Mahia*, No. 12-MC-794 DLI, 2013 WL 1629254, at *5 (E.D.N.Y. Apr. 15, 2013) ("[I]t would be more efficient for the Bankruptcy Court to propose findings of fact and conclusions of law in the first instance than withdraw the reference at this stage."); *In re The Antioch Co.*, 435 B.R. 493, 501 (Bankr. S.D. Ohio 2010) ("Even in cases in which non-core issues have been paramount, courts have delayed withdrawing the reference until the time of trial."); *see also* ECF No. 7 p. 10. Even if Plaintiff's claims are non-core, that does not mitigate in favor of dislodging the Bankruptcy Court, whose extensive experience with the Debtor and its stakeholders, such as Mr. Goldman, makes it well suited to administering the Adversary Proceeding swiftly and efficiently. This is doubly true in light of the fraudulent transfer claims arising under the Bankruptcy Code, which the Bankruptcy Court would be equally, if not more, well suited to adjudicate.

The Debtor's bankruptcy case has been before Chief Judge Glenn for more than two years. Chief Judge Glenn has deep knowledge of the Debtor and its prepetition dealings, including those of its former sole shareholder, Mr. Goldman, whose conduct is now at the center of this Adversary Proceeding. Indeed, courts have previously declined to withdraw the reference and preferred to keep claims before Chief Judge Glenn because of his "expertise and extensive familiarity" with a debtor's plan. *See In re Residential Cap.*, LLC, 519 B.R. 593, 603 (S.D.N.Y. 2014).

Further, as the progress of the case since March demonstrates, the case is moving smoothly and efficiently in the Bankruptcy Court. Though Defendant demanded a jury trial, the evidence

strongly suggests that this matter that can be decided by the Bankruptcy Court through dispositive motions aimed at the purely legal question of whether the "release" is ineffective to block Defendant's otherwise clear liability, which is certainly why Chief Judge Glenn granted leave to file such a motion. In such a case the Second Circuit has recognized that the Bankruptcy Court is the appropriate forum. *See Orion*, 4 F.3d at 1101–02.

For all these reasons, as well as additional arguments and case law in Plaintiff's Opposition to the Reference Motion [ECF No. 7], the *Orion* factors weigh in favor of denying Defendant's request to withdraw the reference.

B. **Defendant Is Unlikely to Succeed on Motion to Compel Arbitration**

Two legal principles are fatal to the Defendant's request to compel arbitration. The first is that arbitration will not be compelled absent the parties' clear, explicit, and unequivocal agreement to arbitrate. *Manigault v. Macy's East, LLC*, 318 F. App'x 6, 7–8 (2d Cir. 2009). Here, the arbitration provision, executed three years before the Note, by its own terms does not apply to the Note or to any dispute outside of four specifically identified real estate transactions. The second legal principle is that a party waives its right to compel arbitration through litigation conduct, such as participating in the lawsuit. *GateGuard, Inc. v. Goldenberg*, 585 F. Supp. 3d 391, 396 (S.D.N.Y. 2022). Here, Defendant's motion to compel arbitration was months overdue and filed only as a delay tactic. Thus, Defendant's motion to compel arbitration is likely to fail both because it fails to demonstrate a clear agreement to arbitrate these claims and because it was untimely.

*i. The 2015 Agreement's Arbitration Clause Does Not Apply*

By its plain and ordinary terms the arbitration agreement applies to three categories of disputes: (1) disputes that "concern this agreement," (2) disputes that "concern[] any of the four properties mentioned above," and (3) any other matter that "both parties agree as to being derived from the above properties." ECF No. 3-1 at pp. 234–35. Those four properties are, as identified

-11-

in the 2015 Agreement: "41-21 28th Street," "The North Flats," "Albee Square," and "19 Kent." ECF No. 3-1 at pp. 229–230. This dispute concerns the Note, which was executed in 2018, three years after the arbitration agreement was signed and **six years** after the Albee Square, North Flats, and 28th Street projects began. As to disputes concerning the 2015 Agreement, this Adversary Proceeding is completely unrelated to the 2015 Agreement both because the Note did not exist in 2015 and because the fraudulent transfer claims related to the "release" are not remotely related to the four properties that make up the subject matter of the 2015 Agreement. As to disputes concerning the Albee Square, North Flats, 28th Street, and Kent properties, the Adversary Proceeding is wholly unrelated to those development projects. The Note makes no mention of those projects. The Note was not issued in connection with those projects. Finally, it is obvious that both parties do not agree that this dispute implicates the 2015 Agreement. Accordingly, the scope of the arbitration provisions according to the plain and ordinary meaning does not extend to promissory notes executed outside the context of the four specifically identified real estate projects nor would it extend to fraudulent transfer claims related to releases executed in 2020.

    ii.  *It Is Far From Clear That the Arbitration Provision Binds the Debtor*

Defendant's deposition testimony significantly calls into question whether Plaintiff, as successor-in-interest to the Debtor, is the party bound by the 2015 Agreement. During his deposition, Defendant testified that he was under the impression he was dealing with Yoel Goldman personally, and not with any corporate entity:

> Question: In your mind, was Mr. Goldman and all these other entities, some of which are called All Year, were they distinct and separate, or was it all just, kind of, Mr. Goldman?
>
> Answer: All of them was Mr. Goldman.
>
> Question: Okay. So in your mind, you're dealing with Yoel Goldman and that's it?
>
> Answer: That is correct. … for me all of his entities, everything was one person.

ECF No. 8-1 (Silberstein Dep. p. 65). This is important because the 2015 Agreement, which contains the arbitration provision, concerns Defendant's real estate dealings that began in 2012 and 2013, *i.e.,* **before the Debtor even existed**. In order for the 2015 Agreement to bind the Debtor it must have been agreed to by the Debtor in the first place. Defendant's testimony, at a minimum, creates factual questions and strongly suggests that the 2015 Agreement was only ever meant to be between Goldman and Defendant as individuals. Those factual questions are sufficient to defeat a motion to compel arbitration. *Aminoff & Co. LLC*, 2022 WL 987665, at *3 (S.D.N.Y. Apr. 1, 2022).

### iii. Defendant Waived His Right to Arbitrate

A litigant waives his right to compel arbitration by failing to bring a timely motion and participating in the litigation. A court must look to three factors to determine whether a party has waived its right to compel arbitration in this way: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010).

Here, Defendant knew of the arbitration provision long before the outset of the case and he first disclosed the 2015 Agreement in his Initial Disclosures in November 2023. Yet he waited until February 2024 to bring a motion to compel arbitration. The lack of reasonable explanation for the delay, more so than the length of time of such delay, mitigates in favor of waiver. *Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*, 2018 WL 6618389, at *3 (S.D.N.Y. Dec. 18, 2018) (finding waiver after defendant offered "no reasonable explanation as to why it waited" to seek arbitration); *see also Merrill Lynch*, 626 F.3d at 159–60 (characterizing an eleven-month delay as a "significant amount of time" that, in combination with other factors, constituted waiver);

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (seven-month delay supported waiver).

Finally, at this point in the litigation, arbitration before the Rabbinical court of the Hisachdus Harabonim would pose significant prejudice to the Plaintiff and needlessly reboot a case that has reached the summary judgment stage from scratch. This prejudice would be a direct result of Defendant's tactical decision to delay filing his motion to compel arbitration for several months.

### C. No Irreparable Harm to Defendant Without a Stay, but Prejudice to Plaintiff with One

Proceeding with summary judgment briefing and even Chief Judge Glenn's issuing proposed findings of fact and conclusions of law would pose no irreparable harm to Defendant. As Defendant maintains throughout his briefing on the instant motion and in his Reference Motion, Chief Judge Glenn may not have the authority to finally adjudicate the case. Even if this Court were to eventually withdraw the reference or even compel arbitration, any prejudice to Defendant would be far from "irreparable" in nature, as delays and costs are normally not considered as rising to such a degree as to justify injunctive relief or stays of litigation.

On the other hand, and as several courts have explained, plaintiffs will be prejudiced by a stay in the form of delayed enforcement and collection of obligations that could be used to satisfy creditors or return value to equity holders. *See In re The Antioch Co.*, 435 B.R. 493, 502, 53 Bankr. Ct. Dec. (CRR) 64 (Bankr. S.D. Ohio 2010); *In re Northwestern Institute of Psychiatry, Inc.*, 268 B.R. 79, 92 (Bankr. E.D. Pa. 2001).

### D. The Public Interest Is Not Served by Meritless Delay

Finally, Defendant has not shown that a stay is in the public interest and that "there is a public interest in resolving matters quickly." *Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 235 (S.D.N.Y. 2016). Weighed against the fact that Defendant's request to compel arbitration has

severe factual and legal flaws, the public interest in speedy resolution to legal matters mitigates in favor of denying Defendant's request for a stay.

## Conclusion

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendant's Motion to Stay Adversary Proceeding Pending Decision on Defendant's Motion to Withdraw the Reference and Compel Arbitration in its entirety.

Dated: August 5, 2024

Respectfully submitted,

CHAPMAN AND CUTLER LLP

By: _____
Eric Silvestri

Eric Silvestri (admitted *pro hac vice*)
CHAPMAN AND CUTLER LLP
320 South Canal
Chicago, Illinois 60606
(312) 845-3000
silvest@chapman.com