**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| ALL YEAR HOLDINGS LIMITED, | ) | |
| | ) | |
| Debtor, | ) | Bankruptcy Case No. 21-12051 (MG) |
| | ) | |
| AYH WIND DOWN LLC, THROUGH OFER TZUR AND AMIR FLAMER, SOLELY IN THEIR JOINT CAPACITY AS CLAIMS ADMINISTRATOR, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Adversary No. 23-01180-mg |
| YOEL SILBERSTEIN, | ) ) | |
| Defendant. | ) | |

**DECLARATION OF ASSAF RAVID IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I, II, AND IV OF THE AMENDED COMPLAINT**

I, Assaf Ravid, hereby declare under penalty of perjury to the best of my knowledge, information and belief:

1. I am the Plan Administrator of AYH Wind Down LLC (*"Plaintiff"* or *"Wind Down Co."*),[1] which was created pursuant to the Debtor's confirmed Third Amended Chapter 11 Plan of Reorganization [Bankr. ECF No. 289] (the *"Plan"*) and vested with rights to bring this lawsuit under that certain Plan Administration Agreement executed in conjunction with the effectiveness of the Plan (the *"Plan Administration Agreement"*).

---

[1] Wind Down Co. is the entity that succeeded to All Year Holdings Ltd.'s (*"Debtor"*) interests in YG WV LLC pursuant to that certain Third Amended Chapter 11 Plan of Reorganization of All Year Holdings Limited, dated December 9, 2022, as confirmed by that certain Confirmation Order entered January 31, 2023. *See In re All Year Holdings Limited*, Case No. 21-12051(MG) (the *"Main Case"*), ECF No. 352.

2. Previously, I served as Chief Executive Officer and Chief Restructuring Officer of the Debtor, beginning in March 4, 2021. Prior to that, I served as an official representative of the Debtor's Series B, C, D, and E Bondholders.

3. I respectfully submit this declaration in support of Wind Down Co.'s Motion for Partial Summary Judgment on Counts I, II, and IV of the Amended Complaint (the *"Motion"*) against Mr. Yoel Silberstein (*"Defendant"* or *"Silberstein"*).

4. As Plan Administrator of Wind Down Co., I am fully familiar with the facts and circumstances set forth herein, except as to those matters stated upon information and belief, and as to those matters, I believe them to be true.

5. I am also knowledgeable and familiar with the Debtor's business and financial affairs. The facts set forth in this Declaration about the Debtor, including the Debtor's finances and financial condition, are based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtor who are working or worked under my supervision, or my opinion based on experience, knowledge, and information concerning the Debtor.

6. This lawsuit is specifically brought on behalf of Wind Down Co. by Ofer Tzur and Amir Flamer solely in their joint capacity as Claims Administrator on behalf of Wind Down Co. (the *"Claims Administrator"*) under the Plan and the Plan Administration Agreement.

7. Under the Plan Administration Agreement, a true and correct copy of which is attached to the Plan, Ofer Tzur and Amir Flamer were jointly appointed Claims Administrator. Specifically, the Plan Administration Agreement states:

> The Administrators hereby (a) accept their respective appointments as the Plan Administrator and the Claims Administrator as of the Effective Date, and (b) agree to observe and perform all duties and obligations imposed upon each of the Administrators under this Agreement, the Plan and the Confirmation Order, and other orders of the Bankruptcy Court as made expressly applicable to the Plan

Administrator and the Claims Administrator, as applicable, after notice to the Plan Administrator or the Claims Administrator, as applicable, and a hearing thereon, and applicable law.

8. The Plan Administration Agreement further vests in the Claims Administrator complete authority to "control and exercise authority over the Avoidance Actions and Causes of Action vested in Wind Down Co. pursuant to the Plan, and over the litigation, management and disposition thereof."

9. The Plan implements a transaction between the Debtor and Paragraph Partners LLC (*"Sponsor"*), pursuant to an Investment Agreement dated March 11, 2022, as amended (the *"Investment Agreement"*). Under the Investment Agreement, the Sponsor acquired the Transferred Entities (as defined in the Investment Agreement) but left behind all Excluded Assets (as defined in the Confirmation Order), which instead vested in Wind Down Co. on the Effective Date to be administered for the benefit of creditors by the Plan Administrator.[2]

10. A true and correct copy of Plaintiff's Amended Adversary Complaint (*"Complaint"*) (without exhibits, which are separately appended hereto) is attached as Exhibit 1 hereto.

11. A true and correct copy of the Promissory Note dated March 21, 2018, that Defendant executed in favor of the Debtor in the principal amount of $3,350,000 (the *"Note"*) is attached as Exhibit 2 hereto.

12. True and correct copies of the Debtor's accounting records are attached as Exhibit 3 hereto. Exhibit 3 consists of excerpts from the Debtor's general accounting ledger, maintained in the ordinary course of business at the Debtor, by a person with knowledge of the distributions to Mr. Silberstein. These records reveal that on March 21, 2018 the Debtor transferred over

---

[2] "Plan Administrator" as defined in the Plan includes the Claims Administrator. *See* Plan § 1.74.

$3,350,000 from a bank account belonging to All Year Holdings LLC to Silberstein at one of his bank accounts ending in -1528.

13. The Note matured on March 30, 2019.

14. On March 30, 2022, Debtor, through its attorneys, issued written demand to Mr. Silberstein that he remit the full amount owed under the Note to the Debtor.

15. As of the date of this filing, Silberstein has failed to remit any payment whatsoever on the Note.

16. Interest has continued to accrue since the March 30, 2022 demand, and, as of August 16, 2024, the amount owed under the Note is no less than $6,834,000.97, consisting of $3,350,000 of outstanding principal and $3,484,000.97 in outstanding interest. Interest will continue to accrue at a *per diem* rate of $1,488.89.

17. Other than the Note, there are no written real estate agreements (or agreements of any kind) between the Debtor and Silberstein.

18. There are no agreements in which the Debtor assumed any of Goldman's obligations to Silberstein.

19. All Year Holdings, Ltd. was established and incorporated on September 17, 2014.

20. The Debtor's records financial records reveal that the Debtor was insolvent or about to become insolvent on or around October 1, 2020, due in large part to payment defaults on hundreds of millions of dollars in loans. True and correct copies of these records are attached as Exhibit 4 hereto.

21. Exhibit 4 includes unaudited condensed consolidated financial statements dated as of September 30, 2020 (the *"September Financials"*), which was previously produced in discovery in a spreadsheet denoted as WIND DOWN000001–52.

22. Exhibit 4 additionally includes the underlying internal data from the Debtor's records that are reflected in the September Financials, which was previously produced in discovery in a spreadsheet denoted as WIND DOWN000005.

23. The September Financials contains an extensive "Note 2" which discusses several "[m]aterial doubts in respect of the continuation of the Company as a going concern." *See* September Financials p. 3 (WIND DOWN 000015).

24. Note 2 contains several topics regarding the status of the Debtor as a going concern, including the "non-payment of liabilities," including defaults under $32 million of Series B bonds, under $646 million of Series B, C, D, and E bonds, under a $65 million mezzanine loan, under a $55 million "Smith" loan, and under a $39 million referred capital investment agreement defaults. *See* September Financials p. 3–15 (WIND DOWN 000015–27).

25. The September Financials further clarify that, because of the material doubts expressed in Note 2, that "the lenders [have] grounds for immediate repayment of the full debts of the Company thereto, and gives the holders of the Debentures (Series B, C, D and E) the grounds to call for immediate repayment of the full balance of the Debentures. In the opinion of the Board of Directors of the Company and the management thereof, there are material doubts with regard to the continued existence of the Company as a going concern in the near future." *See* September Financials p. 3 (WIND DOWN 0000003).

26. In addition to the extensive discussion in Note 2 of the September Financials, a review of the Debtor's internal financial records confirms that in in October and November of 2020, its debts exceeded its assets.

27. The September Financials are artificially inflated by including a rent receivable asset of $17.8 million, the collection of which was uncertain at the time. *See* Ex. 4, at row 4.

28. The September Financials are further artificially inflated by the inclusion of $36,000,000 in cash assets for the Debtor without including a corresponding liability for that $36,000,000 in cash. *See* Ex. 4, at row 1.

29. As to this $36,000,000 in cash, subsequent investigation undertaken pursuant to Bankruptcy Rule 2004 has revealed that beginning in 2019 the Debtor's cash position was being artificially inflated by an unauthorized line of credit that Goldman opened with UBS Bank that, without the board's knowledge or consent, was secured by a senior lien on the Debtor's assets, including cash assets.

30. The Debtor did not have the funds to repay this line of credit with UBS Bank, and Goldman eventually engaged in additional unauthorized borrowing, backed by confessions of judgment, to repay the line of credit.

31. On November 29, 2020, the Debtor published that it was unable to make payment obligations on approximately $800 million in bonds.

32. The Debtor filed its chapter 11 bankruptcy petition on December 14, 2021.

33. As I stated in my declaration before this Court on December 14, 2021 that was filed alongside the Debtor's chapter 11 petition, during the COVID-19 Pandemic the Debtor struggled to service its significant debt burden.

34. Shortly after the Debtor defaulted on its bond obligations on November 29, 2020, it engaged in extensive negotiations with its creditors and other constituents to explore restructuring options, given that it was unable to service its debt at the time.

35. During this period, which was prior to the Debtor's bankruptcy filing, the Debtor's Board of Directors was negotiated with Goldman to loosen his control of the Debtor. These steps

were taken after Goldman had previously taken control of the board and authorized the Debtor to make payments on obligations that he had also personally guaranteed.

Dated: New York, New York
      August 16, 2024

_____
Assaf Ravid