# EXHIBIT 6



Date: 11/14/2023

Media: Pdf file

Description: HE->EN; Writ of agreement in classical Hebrew

---

## DOCUMENT TRANSLATION

[*Inscription, top right*] With God's help

Writ of Mediation and Agreement

A record of the details of the agreement as discussed and agreed to by the undersigned parties, namely: Mr. Yoel Goldman, on his own behalf and on behalf of the companies All Year Holdings, 41-21 28th St. Acquisition LLC, The North Flats LLC, Spencer Albee Equities LLC, and 19 Kent Development LLC, henceforth referred to as "Party A"; and Mr. Yoel Silberstein, henceforth referred to as "Party B." The parties have accepted these terms as a binding agreement and in a manner most effective according to the laws of the Holy Torah and the laws of the land, to affirm and uphold all the details presented in this writ of agreement.

1) Party A purchased a sizable property, located at the address 436 Albee Square, in the city of Brooklyn, NY, and Party B assisted him substantially in this purchase and accompanied him throughout the entire process, from beginning to end.

2) Party B also brought in Mr. Yoel Glick to participate and invest in this deal for the purposes of building a development; and Party B came to an agreement between them, for Mr. Yoel Glick to provide for the building expenses up to one hundred

million dollars ($100,000,000), and according to the conditions agreed to between them.

3) Party A admits that he came to a prior agreement with Party B, and Party A committed to Party B, in a most effective manner, to pay him in exchange for his efforts in such manner that Party B will be owed a ten percent (10%) partnership in the properties, to be deducted from the portion belonging to Party A. (That is, Party A shall hold 40%, Party B 10%, and Mr. Yoel Glick 50%.) Indeed, as of today, Party A does indeed admit and affirm that Party B is owed a 10% partnership in the abovementioned property, from the portion belonging to Party A.

4) The definition of 10% of the properties shall be such that it shall remain a total of 10% even after the building is completed in full, the apartments rented out, and the property shall have appreciated in value; yet, even so, his aforementioned 10% portion shall not change, and Party B shall have no obligation to invest any amounts in the properties until after the apartments are rented out, and he shall receive his 10% share made out to his name within the legal documents; but they are agreed that after receiving the share in his name and after the apartments are fully rented out, from that point onward, Party B, too, shall be obligated to contribute 10% for all types of expenses and capital investments that the property shall require during the ensuing years.

5) However, during the first year after the apartments shall be rented out in full, Party B shall have the option to demand that Party A purchase his portion of the properties at a price that shall be determined by three expert appraisers, who shall be selected by agreement of both parties; and regardless of circumstance, the price shall be no less than three million and two hundred fifty thousand dollars ($3,250,000); and as soon as Party B requests that [Party A] purchase his portion, Party A shall be obliged to pay for his portion within 90 days of the request; and if 90 days shall pass from the time of the request without Party A having paid the amount, Party A will be obligated to pay Party B an annual sum of 7% of the amount of the purchase that he was obligated to pay him. (As is understood, this shall be done in such manner that

interest — or *ribbis* — is not prohibited, and according to the provisions of a *heter iska*.)

6) In the event that the building process shall be prolonged, or any other reason that shall come about, and even after three years and six months from the date given below Party B shall not have received the full 10% share made out to his name, as confirmed by an attorney that Party B shall choose, Party A shall thus be obligated to pay Party B the amount of $3,250,000 (and, of course, Party B shall no longer receive the 10% partnership in the aforementioned property); and Party A shall be obligated to pay the full amount owed no later than 60 days from the aforementioned period (that is, at the end of three years and eight months from the date given below). And if 60 days shall pass and Party A shall delay any portion of the above amount, he shall from that point onward pay Party B an annual fee of 7% of the remaining amount owed; and, of course, such payment shall be made in the manner of *heter iska*.

7) It is also agreed that in such case that Party A or Mr. Yoel Glick should decide to sell the properties prior to the building being completed, Party A shall be obligated to pay Party B, at the time of sale, the value of 10% owed to Party B; and if it should not be assessed by expert appraisers to be worth at least the amount of $3,250,000, as above, Party A shall be obligated to pay this amount, at minimum, at the time of sale; and if he shall delay payment of this amount, Party A shall be obligated to pay Party B an annual amount of 7% of the sum owed to him (in accordance with the *heter iska*, in such manner that there be no [prohibition due to] interest — or *ribbis* — as stated above).

8) Party A is already obligated to pay Party B an amount for recruiting Mr. Yoel Glick in other business deals, and [because] he has aided and assisted Party A through hours upon hours of work and counsel, and to this day he has not paid him that which they had agreed among themselves; and therefore, they have agreed to the provision that until he shall pay the abovementioned amount, he shall now also pay the rest of the amounts already owed to him, and according to the following provisions.

9) For the efforts and exertions of Party B on behalf of Party A in the development at the address 163 N. 6th St., called North Flats, in the city of Brooklyn, NY, Party A is obligated to pay Party B the amount of one million and five hundred thousand dollars ($1,500,000); and for his efforts and exertions in the development located at the address 41-21 28th St., in the city of Long Island City, in Queens, NY, Party A shall be obligated to pay Party B the amount of one million and nine hundred twenty five thousand dollars ($1,925,000); and a long time has already passed, and Party B has still not received anything.

10) Therefore, they have reached an agreement that Party B shall accept an additional 10% of Party A's portion in the two abovementioned properties, and he shall be an equal partner concerning all matters for his portion in the amount of 10%; however, he is under no obligation to invest any amounts in the properties prior to the apartments being rented out; and after the apartments shall be rented out, he shall, from that point onward, be a full partner concerning all matters, including the investment of money in the event that it shall be required in the ensuing years.

11) With this payment, Party A shall have paid Party B in full for all his efforts and actions, both for finding Mr. Yoel Glick for him and for assisting him on all the details of the development, etc.; and Party B shall have no further claim or demand due to the abovementioned properties; and even if Party A had promised him anything in addition, Party B hereby affirms and stipulates that with this payment, all shall have been paid, and Party A shall have no further obligation to add anything to him from these properties.

12) However, they are agreed that whereas the development of the two abovementioned properties has taken much longer than previously estimated, Party B therefore retains the right, at any such time that he feels pressed for money, to request that Party A pay him the abovementioned amounts (that is, the amount of $1,500,000 and the amount of $1,925,000, and Party A is then obligated to pay Party B these sums within a maximum 90 days from the day of the demand; and he shall, by so doing, nullify the right of Party B to any partnership in these two properties, and Party A shall retain

full ownership of these properties together with Mr. Yoel Glick, and Party B shall from that point onward have no claim or demand on the properties). And if three years and six months from the signing of this agreement shall pass without Party B having received his portion in an official manner, Party A shall then be obligated to pay the above amounts as a full and proper obligation, and Party A shall subject all his properties that he has already purchased and that he will purchase in the future toward this obligation, in an unconditional manner; and if he shall not pay Party B the amount owed within 60 days, he will be obligated to pay interest (*ribbis*) in a manner that is permitted through *heter iska*, an annual amount of 7% of the fully unpaid balance.

13) All these percentages that Party B shall receive in all three properties, he shall also receive in an official manner, and Party A has therefore obligated himself to provide Party B the legal documents in which he shall designate and transfer the shares to Party B according to what he is obligated to give him as specified in this writ; and they shall execute it all through qualified, expert attorneys, in such manner that Party B shall be able to document with the authorities his ownership of the percentages owed to him in the properties.

14) Party B shall make efforts to assist Party A in the future as well, on each of his properties, etc., as he has done until today.

15) Party A and his partners jointly purchased the property located at the address 19 Kent, and Party A admits and confirms that Party B found Mr. Shimon Dushinsky to participate with him and to invest capital; and according to the agreement, Party B is owed a partnership in the property to be subtracted from Party A's portion; however, at present, Party A has signed a joint contract with Mr. Shimon to sell his share of the partnership to the other partners, and Party A therefore admits and confirms that the profit thereof is also due to Party B; and when the sale shall be executed, according to the price and provisions of the signed contract, he must also pay Party B that which is owed to him; however, given that it is unclear at present how much Party B will be owed, Party B therefore agrees and confirms that he is not owed more

than the amount of $1,500,00; and Party A admits and confirms that he is not owed less than the amount of $1,000,000; and the parties shall mutually agree among themselves regarding the precise amount owed, and if they are unable to reach an agreement, they shall turn to the third parties or the rabbinical court, as shall be further described.

16) Party B is permitted to attempt to also receive some payment from Mr. Shimon Dushinsky for his efforts, and Party B shall have no relation to this; and even if he successfully receives [some payment] from Mr. Shimon, that will in no way enter the calculation of what Party A must pay Party B, and no amount shall be deducted against it from whatever Party A is obligated to pay from his own portion.

17) With the signing of this agreement, all prior agreements between the parties regarding the abovementioned properties shall be nullified, in the event that it contradicts the contents of this agreement; and even if he shall possess written agreements regarding the abovementioned properties, the contents of this agreement shall take precedence and outweigh any written matter that is contrary to what is described in this agreement; but if there shall be any provision that is not contrary to this agreement, it shall remain fully in effect.

18) For any question or doubt or dispute that shall arise between the parties, in all that concerns this agreement, or concerning any of the four properties mentioned above, both regarding fulfilling the essence of the agreement as well as regarding the payment of interest, as describe above, and also concerning the sale of the properties or any portion of them prior to renting out the apartments, or any other matter that both parties agree to being derived from the above properties, the parties shall turn to the mediator Rabbi Avraham Shlomo Ausch, or Rabbi Chaim Mordechai Shtesel, who are acceptable to both and who may facilitate a compromise between them; and if they are unable to agree on which of them to turn to, or if they shall be otherwise unable to turn to them, they shall adjudicate the matter before the rabbinical court (*beis din*) of the Hisachdus Harabonim; and the signing of this agreement shall in full effect be equal to signing an arbitration agreement before the rabbinical court of the

Hisachdus Harabonim mentioned above, and according to what is customary to sign at present before those rabbinical courts that allow for it to be full in effect according to the laws of arbitration.

19) The parties have thoroughly reviewed all the details of this agreement, and they understood all its provisions in order to affirm it, and they are in full agreement regarding its contents, and they have pledged to obligate themselves in a manner that is most effective on all the contents of this agreement, both upon themselves and upon their heirs and representatives; and they have accepted the opinions by which this agreement and its obligations are in effect and binding.

20) Only the conditions and provisions described in this agreement shall be binding upon the parties, and all other agreements they have come to shall be null and void.

We hereby admit as an admission before a reputable rabbinical court that what is described in this agreement was fully effectuated upon an object that is valid for an acquisition ["בקנין גמור אגב סודר במנא דכשר למקניה ביה"], and in other methods that are binding in a manner most effective according to the laws of the Holy Torah and the laws of the land; and with fully responsible commitment, subjecting body and property that has been purchased and that will be purchase henceforth and before a reputable rabbinical court, in a manner that is not conditional, and in accordance with the laws of conditions as established by our sages of blessed memory, like the conditions of the tribes of Gad and Reuven ["כתנאי ב״ג וב״ר"]; and we have accepted all the opinions that give effect to this agreement, even if it is a solitary opinion, and we have nullified all possible notices to the contrary, and we have accepted the weight and obligations of this agreement in full responsibility, and with the force of agreements and obligations that are customary among the Jewish people, according to the ordinances of our sages of blessed memory;

Upon this we place our signatures, on Monday of the Torah portion Vayishlach, the 11th day of the month of Kislev, 5776 [November 23, 2015], in this city of Brooklyn, N.Y.

All is affirmed and in effect.

Signed: Yoel Goldman, and his heirs and representatives, Party A

Signed: Yoel Silberstein, on my own behalf and on behalf of my heir and representatives, Party B, 11/23/2015

And in the name of God, we shall act and we shall succeed!!!

## TRANSLATOR CERTIFICATION

I, Shulem Deen, certify that the above is a true and accurate translation of the Hebrew-language document provided by the client for this translation. (Included for reference below.)

Shulem Deen
Yiddish Language Services, LLC
Certified: November 14, 2023

ORIGINAL DOCUMENT

[illegible]

שטר סידור מסחר

[illegible] דברים [illegible] בהסכם שנסדרו והותנו בין הצדדין בתנאי [illegible]. דהיינו [illegible] יואל גאלדמאן נ"י, [illegible]
ALL YEAR HOLDINGS - 41-21 28TH ST ACQUISITION LLC - THE NORTH FLATS LLC - SPENCER ALBEE EQUITIES LLC
19 KENT DEVELOPMENT LLC - [illegible] צד א', ומוה יואל [illegible] נ"י, [illegible] צד ב', [illegible]
[illegible]

א) צד א' [illegible] 436 Albee Square [illegible] נ"י. [illegible]
[illegible].

ב) צד ב' [illegible] יואל [illegible] $100,000,000, [illegible].

ג) צד א' [illegible] צד ב' [illegible] (50%) [illegible]
[illegible] צד א'.

ד) [illegible] 10% [illegible]
[illegible] 10% [illegible]
[illegible]
צד ב' [illegible] 10% [illegible].

ה) [illegible] צד ב' [illegible]
[illegible].
$3,250,000 [illegible] צד ב' [illegible] צד א' [illegible] 90 [illegible] 90 [illegible]
[illegible] צד א' [illegible] צד ב' [illegible]
[illegible]).

ו) [illegible] 10% [illegible]
[illegible] צד א' [illegible] $3,250,000 [illegible]
[illegible] 60 [illegible] 3 [illegible]
18 [illegible] 60 [illegible] צד א' [illegible]
[illegible].

ז) [illegible] צד א' [illegible] צד ב' [illegible]
[illegible] 10% [illegible] $3,250,000 [illegible]
[illegible] צד א' [illegible].

YIDDISH LANGUAGE SERVICES, LLC

[illegible] את הצד [illegible] דרת וכו׳).

ח) צד א׳ כבר היה לצד ב׳ לשלם [illegible] את [illegible] להוסיף אחריה, [illegible] צד א׳ [illegible] [illegible] הוצאה, [illegible] אחר הסכמו [illegible] והכן [illegible] הסכמות [illegible] היה לו, [illegible] והמעשה דלהלן.

ט) [illegible] ושאר צד ב׳ [illegible] צד א׳ [illegible] 6TH st. [illegible] NORTH FLATBUSH [illegible] צד א׳ [illegible] לצד ב׳ הסכום [illegible] $1,500,000 [illegible] 28 St. [illegible] 21-41 [illegible] 60 [illegible] צד א׳ [illegible] לצד ב׳ הסכום [illegible] $1,925,000 [illegible] כלום.

י) [illegible] לצד ב׳ [illegible] 10% [illegible] צד א׳ [illegible] נכסים [illegible] [illegible] הנכסים [illegible] [illegible] מאז [illegible] הזמן הזה.

יא) צד [illegible] צד א׳ לצד ב׳ [illegible] [illegible] [illegible] לצד ב׳ [illegible] נכסים [illegible] צד א׳ [illegible] הרי צד ב׳ [illegible] נכסים אלו.

יב) [illegible] נכסים [illegible] צד ב׳ [illegible] [illegible] $1,500,000 [illegible] $1,925,000 [illegible] צד א׳ [illegible] [illegible] צד ב׳ [illegible] נכסים אלו, [illegible] 3 [illegible] צד ב׳ [illegible] צד א׳ [illegible] נכסים [illegible] 60 ימים, [illegible] [illegible] לא [illegible].

יג) [illegible] לצד ב׳ [illegible] הנכסים [illegible] צד א׳ לצד ב׳ [illegible] [illegible] לצד ב׳ [illegible] [illegible] להנכסים.

יד) צד ב׳ [illegible] צד א׳ [illegible] [illegible] הזה.

טו) צד א׳ [illegible] KENT [illegible] [illegible] לצד ב׳ [illegible] [illegible] צד א׳ [illegible] [illegible] [illegible] צד א׳ [illegible] לצד ב׳ [illegible] לצד ב׳ [illegible] הרי צד ב׳ [illegible] $1,500,000 [illegible] צד א׳ [illegible] $1,000,000 [illegible] דלהלן.

10

YS000013

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible] השם עשה [illegible] !!!