**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>ALL YEAR HOLDINGS LIMITED,<br><br>                               Debtor,<br><br>AYH WIND DOWN LLC, THROUGH OFER TZUR AND AMIR FLAMER, SOLELY IN THEIR JOINT CAPACITY AS CLAIMS ADMINISTRATOR,<br><br>                               Plaintiff,<br><br>                               v.<br><br>YOEL SILBERSTEIN,<br><br>                               Defendant. | Chapter 11<br><br>Bankruptcy Case No. 21-12051 (MG)<br><br><br><br><br><br><br><br>Adversary No. 23-01180-mg |

**REPLY TO DEFENDANT'S PROCEDURALLY IMPROPER SUPPLEMENTAL FACTS REGARDING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I, II, AND IV OF THE AMENDED COMPLAINT**

As part of his opposition brief, Defendant Yoel Silberstein (*"Defendant"* or *"Mr. Silberstein"*) included several pages of factual allegations. *See* ECF No. 45 at pp. 2–7. Defendant did not assert those facts in a separately filed Responsive Statement of Undisputed Facts, as required by Local Bankruptcy Rule 7056-1(c). Accordingly, those facts require no response and should not be considered during motion practice.

However, in the alternative and in order to preserve its right to substantively respond to and rebut certain of those facts, Plaintiff AYH Wind Down LLC (*"Plaintiff"* or *"Wind Down Co."*), submits this Reply to Defendant's Procedurally Improper Facts in further support of its motion for summary judgment against defendant Yoel Silberstein (*"Defendant"* or *"Silberstein"*) on Counts I, II and IV of the Amended Complaint. Plaintiff responds to these facts and makes this

filing without prejudice while reserving its right to object to the Defendant's supplemental facts as procedurally improper and inadmissible on an individual basis and as a whole.

### DEFENDANT'S SUPPLEMENTAL FACTS

1.     On December 14, 2021, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. The Debtor did not list Defendant as a creditor in its schedules filed on December 28, 2021. Defendant never filed a proof of claim or otherwise appeared or participated in the Debtor's bankruptcy case.

**Plaintiff's Response:** Admitted.

2.     On January 31, 2023, this Court confirmed the Debtor's Third Amended Chapter 11 Plan of Reorganization (the "Plan"). Under section 10.1 of the Plan, the Debtor's rights to pursue "any and all claims and Causes of Action, whether known or unknown, contingent, liquidated or disputed, that the Debtor . . . may have against any third-parties" were assigned to Plaintiff. The Plan did not provide for the transfer or assignment of any negotiable instruments to Plaintiff.

**Plaintiff's Response:** Admitted that the Plan contains the language quoted above. Denied as to the allegation that any assignment was required. Under the Plan, Plaintiff retained the Debtor's causes of action, including this lawsuit, as a representative of the Debtor pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. Furthermore, when a debtor's claims are assigned as part of a confirmed bankruptcy plan, state law will not disrupt Bankruptcy Court's ability to effectuate the assignment under Section 1123(b).

3.     Before its chapter 11 case, the Debtor was a holding company that, through its subsidiaries, focused on the development, construction, acquisition, leasing, and management of residential and commercial income producing properties in Brooklyn, New York.

**Plaintiff's Response:** Admitted.

4.      Prior to January 4, 2021, Yoel Goldman ("Goldman") was the sole shareholder of the Debtor and individual with "day-to-day control."

**Plaintiff's Response:**  Admitted that Goldman was, before Mr. Ravid took over in his role as executive for the Debtor, the sole shareholder of the Debtor and the individual with "day-to-day control."

5.      Defendant dealt with Goldman in his capacity as the Debtor's principal and assisted Goldman in his efforts on behalf of the Debtor to acquire certain properties in Brooklyn and raise millions of dollars from investors to fund the Debtor's development projects.

**Plaintiff's Response:**  Denied.  Silberstein and Goldman did business as individuals and conceived of their business as being with each other on an individual basis.  Silberstein Dep. 65:14–24; Silberstein Dep. 204:19–25; Goldman Dep. 37:20–21.  Silberstein conceived his business with Goldman as strictly on an individual level.  Silberstein Dep. 204:19–25.

6.      On November 23, 2015, Defendant, for himself, and Goldman, for himself and for the Debtor, 41-21 28th St. Acquisition LLC ("Long Island City"), The North Flats LLC ("North Flats"), and Spencer Albee Equities LLC ("Albee Square"), entered into an agreement memorializing the work that Defendant performed for the Debtor's benefit and Defendant's compensation rights (the "2015 Agreement").

**Plaintiff's Response:**  Denied.  The authenticity and origin of the 2015 Agreement is highly suspect, as neither Goldman nor Silberstein appears to be in possession of the original. Silberstein Dep. 126:9–22.  Goldman Dep. 46:2–47:5.  The English translation of the purported 2015 Agreement was provided by Goldman to Silberstein after Silberstein learned of this lawsuit. Silberstein Dep. 130:7–23.  Furthermore, given that the work on these four projects began in 2012, years before the Debtor existed, it is not possible for the obligations alleged in the 2015 Agreement

-3-

to have extended to the Debtor. Silberstein Dep. 73:16–24; 186:2–187:19; 190:4–12; Silvestri Decl. Grp. Ex. 5.

7. For successfully bringing in Yoel Gluck as a major investor and his ongoing efforts to oversee and facilitate the development of the Debtor's properties, Defendant was entitled to receive from the Debtor either (a) 10% interests in the entities that owned those properties or (b) payment of $3,250,000 for Albee Square, $1,500,000 for North Flats, and $1,925,000 for Long Island City. Silvestri Decl., Ex. 6 [Docket No. 39-6].

**Plaintiff's Response:** Denied. At most, the 2015 Agreement recites obligations owed from Goldman to Mr. Silberstein. Silberstein Dep. 73:16–24; 186:2–187:19; 190:4–12; Silvestri Decl. Grp. Ex. 5. There is no written agreement anywhere memorializing these alleged obligations at the time they are alleged to have arisen, *i.e.*, at the outset of Mr. Silberstein's work. Silberstein Dep. 57:6–61:25; Silberstein Dep. 53:25–56:13; Goldman Dep. 22:23–23:25. Given the amount of consideration alleged by Defendant, such agreements would need to have been written down to comply with New York's statute of frauds.

8. The Debtor directly or indirectly owned the interests in Albee Square, North Flats, and Long Island City.

**Plaintiff's Response:** Admitted that the Debtor owned, directly or indirectly the LLCs listed on the Second Amended Disclosure Statement for Chapter 11 Plan of Reorganization of All Year Holdings Limited ECF No. 157.

9. Section 18 of the 2015 Agreement also contains a broad arbitration agreement requiring the parties to arbitrate "any question or doubt or dispute that shall arise between the parties, in all that concerns this agreement, or concerning any of the four properties mentioned above, both regarding fulfilling the essence of the agreement as well as regarding the payment of interest, as describe [*sic*] above, and also concerning the sale of the properties or any portion of

them prior to renting out the apartments, or any other matter that both parties agree to being derived from the above properties."

**Plaintiff's Response:** Admitted that the 2015 Agreement, to the extent such a document could ever be properly authenticated or admitted into evidence, contains the quoted language. Denied that such language is "broad" or that it subjects this dispute to mandatory arbitration, which is a legal conclusion to which no factual rebuttal is required.

10. Following the 2015 Agreement, Defendant's involvement with the projects at Albee Square, North Flats, and Long Island City continued, but the Debtor did not provide Defendant the equity interests or the payments owed to him under the 2015 Agreement.

**Plaintiff's Response:** Admitted that the Debtor did not provide Defendant with any equity interests in Albee Square, North Flats, and Long Island City. Denied that the Defendant was owed equity interests or payments. Silberstein Dep. 65:14–24; Silberstein Dep. 204:19–25; Goldman Dep. 37:20–21.

11. Defendant approached Goldman, as the sole shareholder and representative of the Debtor, to push for the compensation that he was entitled to receive from the Debtor.

**Plaintiff's Response:** Denied that Defendant approached Goldman "as a representative of the Debtor." The two men both testified that they only ever conceived of their business as being between each other on an individual basis. Silberstein Dep. 65:14–24; Silberstein Dep. 204:19–25; Goldman Dep. 37:20–21.

12. On March 21, 2018, Defendant signed a $3,350,000 promissory note in favor of the Debtor with a maturity date of March 30, 2019 (the "Note").

**Plaintiff's Response:** Admitted.

13. The Note was Goldman's idea. Silberstein "told him at the time, I don't want to have it as a loan."

**Plaintiff's Response:** Admitted.

14.     Goldman pushed the Note as a way to structure an interim partial payment pending Defendant's receipt of the equity interests he was entitled to receive from the Debtor under the 2015 Agreement, upon which Silberstein would repay the loan proceeds to the Debtor.

**Plaintiff's Response:** Admitted that Goldman pushed the idea of the Note. Denied that Defendant was entitled to equity interests or payments or that Mr. Silberstein's obligation to repay the Note was somehow contingent. Silberstein Dep. 65:14–24; Silberstein Dep. 204:19–25; Goldman Dep. 37:20–21; Ravid Decl. ¶ 11, Ex. 2 (copy of the Note).

15.     The Debtor never funded the $3,350,000 face amount of the Note and also never gave Defendant the equity interests he was entitled to receive under the 2015 Agreement.

**Plaintiff's Response:** Denied. Ravid Decl. ¶¶ 11–12, Ex 3 (Debtor's financial records establishing loan distribution and amounts due and owing); Silvestri Decl. Ex. 7 (copy of the 2020 Agreement). Defendant's allegation that he never received the loan is flatly contradicted by the 2020 Agreement, which states that "[Yoel Silberstein] **has received a loan**" and that "the amount due [under that loan] as of today **is greater than four million dollars**" Silvestri Decl. Ex. 7 (copy of the 2020 Agreement) (emphasis added). Furthermore, the Debtor's general ledger entries demonstrate that, as of the date of the Note, the balance of Mr. Silberstein's obligations to the Debtor was precisely $3,350,000, the **exact amount** of the principal under the Note. Ravid Decl. Ex. 3 at p. 1. As Mr. Silberstein explained during his deposition, there was an informal free flow of cash between him and the Debtor. Silberstein Dep. 42:3–44:22. 53:25–56:13; 57:6–58:5; Goldman Dep. 22:23–23:25. Thus, the fact that some funds may have flowed back from his bank account to All Year, does not remotely suggest that it was somehow a refund of the loan. Rather, the proper evidence to focus on is the "net" value, as reflected in the Debtor's general ledger entries demonstrate that, as of the date of the Note, the balance of Mr. Silberstein's obligations to the

Debtor was precisely $3,350,000, the **exact amount** of the principal under the Note. *See* Ravid Decl. Ex. 3 at p. 1.

16. On October 1, 2020, to resolve an ongoing dispute concerning Defendant's demands for the compensation owed to him under 2015 Agreement, the parties entered into an agreement (the "2020 Agreement") that, among other things, provided that the Debtor would forgive the promissory note and Defendant would release his claims against the Debtor.

**Plaintiff's Response:** Admitted that the 2020 Agreement purports to release Defendant. Denied as the substantive truth of any of the 2020 Agreement's recitals, in particular the reference to Defendant's alleged right to equity interests in properties or cash from the Debtor. Furthermore, the 2020 Agreement is not admissible on a summary judgment record. The English translation of the purported 2020 Agreement was provided by Silberstein. Silberstein Dep. 163:17–165:23. Silberstein does not possess the original copy of the purported 2020 Agreement. Silberstein Dep. 164:15–17. Goldman does not possess the original copy of the purported 2020 Agreement, but he claims he had it before. Goldman Dep. 61:10–23. Goldman provided only a photograph of the purported 2020 Agreement to the translation services to have it translated into English. Goldman Dep. 62:16–22.

17. The 2020 Agreement "stipulate[d] that the amount owed to [Defendant] is, at minimum, more than six million dollars." The stipulation aligned with the amounts described in the 2015 Agreement, which totaled $6,675,000 for the three properties. Goldman confirmed that Defendant "trimmed down a lot of money that he was owed" from the Debtor as part of the settlement reflected in the 2020 Agreement.

**Plaintiff's Response:** Admitted that the 2020 Agreement contains the quoted language. Furthermore, the 2020 Agreement is not admissible on a summary judgment record. Denied as the substantive truth of any of the 2020 Agreement's recitals, in particular the notion that the

Debtor owed Defendant any funds. Furthermore, the 2020 Agreement is not admissible on a summary judgment record. The English translation of the purported 2020 Agreement was provided by Silberstein. Silberstein Dep. 163:17–165:23. Silberstein does not possess the original copy of the purported 2020 Agreement. Silberstein Dep. 164:15–17. Goldman does not possess the original copy of the purported 2020 Agreement, but he claims he had it before. Goldman Dep. 61:10–23. Goldman provided only a photograph of the purported 2020 Agreement to the translation services to have it translated into English. Goldman Dep. 62:16–22.

18. Consistent with the 2020 Agreement, on October 2, 2020, the Debtor executed a Release of Obligations (the "Release") in Defendant's favor, which provided: The Lender agrees to discharge the Borrower from any claims, liabilities, and obligations under the loan made on 03/21/2018 in the amount of $3,350,000.00. The Lender agrees to Release all parties connected to the original loan agreement including, if any, co-borrowers, co-signers, and guarantors."

19. **Plaintiff's Response:** Denied. The Debtor never executed the release. Mr. Goldman always dealt with Mr. Silberstein in an individual capacity, as confirmed by both men's sworn testimony. Silberstein Dep. 65:14–24; Silberstein Dep. 204:19–25; Goldman Dep. 37:20–21. Admitted that the purported release contains the quoted language.

Dated: October 14, 2024
      Chicago, Illinois

_____
CHAPMAN AND CUTLER LLP
1270 Avenue of the Americas
New York, New York 10020
Telephone: (212) 655-6000
Michael Friedman
David T. B. Audley
Eric S. Silvestri
*Counsel to the Plaintiff*