**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| ALL YEAR HOLDINGS LIMITED, | ) | |
| | ) | |
| Debtor, | ) | Bankruptcy Case No. 21-12051 (MG) |
| _____ | ) | |
| | ) | |
| AYH WIND DOWN LLC, THROUGH OFER TZUR AND AMIR FLAMER, SOLELY IN THEIR JOINT CAPACITY AS CLAIMS ADMINISTRATOR, | ) ) ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 23-01180-mg |
| | ) | |
| YOEL SILBERSTEIN, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I, II, AND IV OF THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

DEFENDANT'S FACTUAL ADMISSIONS ................................................................................. 1

ARGUMENT ............................................................................................................................ 2

    I.     Defendant Never Sought a Stay from the Bankruptcy Court and Would Not Be Entitled to One If He Had ................................................................. 2

    II.    This Court Should Adjudicate this Lawsuit to the Maximum Extent of its Authority .. 4

    III.   Plaintiff Has Standing Under the Plan ........................................................................ 5

    IV.   There Is No Actual Dispute that Mr. Silberstein Owed Funds Under the Note ............ 6

    V.    There Is No Question of Fact concerning Defendant's Work for Goldman ................. 9

    VI.   There Is No Question that All Year was Insolvent in October 2020 ............................ 9

    VII.  Defendant Admitted to Post Maturity Interest in the 2020 Agreement ....................... 10

CONCLUSION ....................................................................................................................... 10

TABLE OF AUTHORITIES

PAGE

**Cases**

*In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355 (3d Cir. 2012) ............................................................6
*In re Renewable Energy Dev. Corp.*, No. 2:12-CV-0771-RJS, 2014 WL 12740132 (D. Utah Jan. 10, 2014) ...........................................................................................................................3
*In re Trinsum Grp., Inc.*, 467 B.R. 734 ..........................................................................................4
*Kramer v. Mahia*, No. 12-MC-794 DLI, 2013 WL 1629254 (E.D.N.Y. Apr. 15, 2013) ................5
*NCA Inv. Liquidating Trust v. Berkowitz, Trager & Trager, LLC (In re Seaboard Hotel Member Assoc., LLC)*, Case No. 19-50257-LSS (Bankr. D. Del. June 10, 2021) ......................................6
*Pryor v. Tromba*, No. 13-CV-676 JFB, 2014 WL 1355623 (E.D.N.Y. Apr. 7, 2014) ....................5

**Statutes**

11 U.S.C. § 1123 ..............................................................................................................................6

**Rules**

FED. R. BANK. P. 5011 ....................................................................................................................2
FED. R. EVID. 803 ............................................................................................................................8

## INTRODUCTION

Mr. Silberstein's tactics in this lawsuit have been to either ignore it or to have it transferred out of this Court. Those efforts have, thankfully, failed. Recognizing that he has run out of time, Mr. Silberstein has pivoted. Now, he suddenly remembers detailed information about his bank account records and financial dealings with the Debtor. He has also, incredibly, located financial records, which were never produced in discovery, and which do not, in any event, raise questions of material fact about money he admits he owed to the Debtor. That admission comes in the form of the 2020 Agreement, the centerpiece of Mr. Silberstein's defense, which clearly states "[Mr. Silberstein] **has received a loan**" and that "the amount due as of [October 1, 2020] **is greater than four million dollars.**" Mr. Silberstein's cynical tactics should be disregarded and the Court should grant summary judgment on Counts I, III, and IV of Plaintiff's Amended Adversary Complaint.

## DEFENDANT'S FACTUAL ADMISSIONS

In his Response to Plaintiff's Statement of Undisputed Facts (ECF No. 44) (*"RSOF"*), Defendant makes several important concessions. He admits that he executed the Note. DSOF ¶¶ 3–4. He admits that the Note matured on March 30, 2019. DSOF ¶ 6. He admits that he did not repay the Note. DSOF ¶ 9. Nevertheless, Defendant "disputes" that he ever received the loan. As discussed below, that "dispute" is not supported by any countervailing evidence that can defeat the records showing that his obligations to the Debtor were debited on the same day the Note was executed such that he owed the Debtor precisely $3,350,00, and that in the 2020 Agreement, Mr. Silberstein admitted that he owed the Debtor over $4 million under the Note.

**ARGUMENT**

**I.    DEFENDANT NEVER SOUGHT A STAY FROM THE BANKRUPTCY COURT AND WOULD NOT BE ENTITLED TO ONE IF HE HAD**

Defendant (again) protests having to litigate this matter in the Bankruptcy Court and complains that this Court should not proceed in light of his motion to compel arbitration. It is critical to note when evaluating Defendant's arguments in this regard that he has never once sought a stay in the Bankruptcy Court. Instead, he has filed all three of his roadblock motions in the District Court. *See* Case No. 24-cv-800-JHR (the *"District Court Case"*), ECF No. 1 (combined reference motion and motion to compel arbitration), ECF No. 12 (motion to stay).

Rule of Bankruptcy Procedure 5011(c), contains two important edicts regarding how the adversary case should proceed in light of a motion to withdraw the reference. First, "[t]he filing of a motion for withdrawal of a case … shall not stay the administration of the case or any proceeding." Second, "[a] motion for a stay ordinarily shall be presented first to the bankruptcy judge," and if a movant seeks to deviate from that procedure, "[a] motion for a stay or relief from a stay filed in the district court shall state why it has not been presented to or obtained from the bankruptcy judge." FED. R. BANK. P. 5011(c). Thus, absent good cause, Defendant needed to request stay the proceedings in the Bankruptcy Court. Defendant's only request for a stay was filed **three months** after he filed his reference motion in the District Court.

His explanation for why he circumnavigated the Bankruptcy Court is at least honest if not cynical: he was sure his request would be denied. *See* District Court Case ECF No. 14 p. 10 ("[F]iling the stay motion on the Bankruptcy Court only for it to be denied and then refiled in this Court would force Defendant, Plaintiff, and the Bankruptcy Court to waste time and resources."). However, Defendant is not free to ignore procedure just because he assumes he will lose in the appropriate forum. Such motivations are improper and justify denying motions for a stay on that basis. *See In re Taub*, 470 B.R. 273 (E.D.N.Y. 2012) ; *In re Renewable Energy Dev. Corp.*,

No. 2:12-CV-0771-RJS, 2014 WL 12740132, at *2 (D. Utah Jan. 10, 2014) ("The Movants' attempt to bypass the bankruptcy court just seven days prior to a second hearing on a motion pending since November 2011 weighs against this court issuing a stay.").

Defendant's plea for a stay in the face of a pending arbitration motion also rings hollow. Defendant has known about the 2015 Agreement, the document that contains an arbitration clause, since he first produced it in his Initial Disclosures in November 2023. Yet he waited until February 2, 2024, to file that motion and chose to bring it to the District Court rather than the forum where this case was actually being litigated.[1] Now he insists this Court must wait while his chosen forum considers his motion for stay. The Court should decline. Defendant gambled on the District Court ordering the reference withdrawn and then determining his arbitration motion. The Bankruptcy Court, which has before it no motion for a stay, does not need to rescue Defendant from his miscalculated procedural gamesmanship.

But even if this Court were to consider the merits of a stay pending his arbitration motion, Defendant's request would fail for three reasons. First and foremost, the arbitration provision in the 2015 Agreement, executed three years **before** the Note, does not apply to the Note or to any dispute outside of four specifically identified real estate transactions. By its terms the arbitration clause in the 2015 Agreement applies to three categories of disputes: (1) disputes that "concern this agreement," (2) disputes that "concern[] any of the four properties mentioned above," and (3) any other matter that "both parties agree as to being derived from the above properties." SOF ¶¶ 24–29; ECF No. 39-6. Those four properties are: "41-21 28th Street," "The North Flats," "Albee Square," and "19 Kent." *Id*. This dispute concerns the Note, which was executed in 2018, three years after the 2015 Agreement and six years after the Albee Square, North Flats, and 28th Street

---

[1]   February 2, 2024 was just a few days before this Court would order Defendant to make himself available for a deposition, an obligation which he had been ignoring for weeks up until that time. *See* ECF No. 16.

projects began. As to disputes that "concern 2015 Agreement," this proceeding is completely unrelated to the 2015 Agreement both because the Note did not exist in 2015 and because the fraudulent transfer claims related to the "release" are not related to the four properties that make up the subject matter of the 2015 Agreement. As to disputes concerning "any of the four properties," this proceeding is wholly unrelated to those development projects. The Note makes no mention of those projects. The Note was not issued in connection with those projects. Finally, it is obvious that both parties do not agree that this dispute implicates the 2015 Agreement. Accordingly, the scope of the arbitration provision in the 2015 Agreement, does not extend to this dispute.

Second, Defendant confirmed multiple times at his deposition that the 2015 Agreement and the disputes it purports to catalogue were between Goldman and the Defendant and had nothing to do with the Debtor. Third, Defendant waived his right to arbitrate by failing to timely file a motion to compel arbitration and by participating in this litigation.[2] For all of these reasons, Defendant's argument that this Court must refrain from further adjudication of this matter are legal incorrect, procedurally improper, and waived by virtue of Defendant electing to wait months to bring such requests while never actually requesting this relief from the appropriate court.

II. **THIS COURT SHOULD ADJUDICATE THIS LAWSUIT TO THE MAXIMUM EXTENT OF ITS AUTHORITY**

Plaintiff and Defendant agree that, if the Court were to determine that Plaintiff is entitled to the full relief it seeks in its motion for partial summary judgment, it would likely need to enter proposed findings of fact and conclusions of law. *See In re Trinsum Grp., Inc.*, 467 B.R. 734. That is not a reason for the Court to hesitate. Any difficulties resulting from the additional

---

[2] These arguments are discussed extensively in Plaintiff's Brief in Opposition to Defendant's Motion to Compel Arbitration (District Court Case ECF No. 7) and Plaintiff's Brief in Opposition to Defendant's Motion to Stay the Adversary Proceeding (District Court Case ECF No. 15). Plaintiff directs the court to those briefs for further argument on the procedural, legal, and factual flaws with Defendant's arguments.

procedural step of the Bankruptcy Court submitting findings of fact and conclusions of law are outweighed by the advantages and efficiencies inherent in having this matter adjudicated by a Bankruptcy Court that is intimately familiar with the history of the Debtor's operations, the design and implementation of the Plan, and the identity and conduct of the stakeholders. *See, e.g., Kramer v. Mahia*, No. 12-MC-794 DLI, 2013 WL 1629254, at *5 (E.D.N.Y. Apr. 15, 2013); *Pryor v. Tromba*, No. 13-CV-676 JFB, 2014 WL 1355623, at *7 (E.D.N.Y. Apr. 7, 2014). Indeed, there is no court in a better position than this one to consider the issues of All Year's insolvency and its business dealings with real estate professionals like the Defendant.

### III.  PLAINTIFF HAS STANDING UNDER THE PLAN

Plaintiff is a creature of All Year's Confirmed Chapter 11 Plan, and specifically was created to serve as Claims Administrator for retained causes of action and rights that did not flow to the reorganized Debtor following confirmation of the Plan. *See* Case No. 21-12051 (MG) (the *"All Year Bankruptcy"*) ECF No. 289. Specifically, as outlined in the Plan, the Excluded Assets, which included the right to pursue this claim, were "transferred to, and vest in, [Plaintiff] on the Effective Date." Plan § 1.117; *see also* Plan § 1.42 (defining Excluded Assets to include "any and all claims and Causes of Action . . . against any third-parties").

Defendant avers that the Plan failed to actually vest Plaintiff with the right to pursue these claims because it contained no formal assignment of the Note. That argument misunderstands the Plan and Plaintiff's role in it. Under the Plan, Plaintiff retained the Debtor's causes of action, including this lawsuit, as a representative of the Debtor pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. *See* 11 U.S.C. § 1123(b)(3)(B) ("A plan may . . . provide for . . . the retention and enforcement by the . . . representative of the estate appointed for such purpose, of any such claim or interest."). Furthermore, when a debtor's claims are assigned as part of a confirmed bankruptcy plan, state law will not disrupt Bankruptcy Court's ability to effectuate the assignment

under Section 1123(b).  *See NCA Inv. Liquidating Trust v. Berkowitz, Trager & Trager, LLC (In re Seaboard Hotel Member Assoc., LLC)*, Case No. 19-50257-LSS (Bankr. D. Del. June 10, 2021). In *Seaboard Hotel,* Chief Judge Silverstein recognized that the assignment of a legal claim from the plan debtors to the § 1123(b)(3)(B) representative of the estate, and specifically an assignment to a litigation trust, was "no different than Plan Debtors themselves suing on behalf of their estates with recoveries going to creditors/investors."  *Id.* at 28; *see also In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355, 367 (3d Cir. 2012) (holding that state law would not interfere with a Debtor's right to transfer insurance rights under a confirmed plan and grounding its decision on language in § 1123(a) indicating that it is in effect "notwithstanding any otherwise applicable nonbankruptcy law").  Here, as in *Seaboard*, Plaintiff is designated as a representative under § 1123(b) of the Bankruptcy Code: "as permitted by section 1123(b)(3)(B) of the Bankruptcy Code, the Plan provides for the retention of . . . Causes of Action by [Plaintiff]." *See* All Year Case ECF No. 352 at p. 12.  Morever, the Plan makes clear that "[u]pon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects [and] [a]ll matters provided for in the Plan . . . shall be deemed to have occurred and shall be in effect, without any requirement of further action by . . . the Debtor . . . or [Plaintiff]."  Plan § 5.7.  Accordingly, Plaintiff has standing to bring this lawsuit.

**IV.    THERE IS NO ACTUAL DISPUTE THAT MR. SILBERSTEIN OWED FUNDS UNDER THE NOTE**

Defendant attempts to manufacture a question of material fact by disputing that, despite the fact the Debtor's general ledger reveals he owed the Debtor, as of the date of the Note, $3,350,000, he actually did not owe any money because he never technically received the loan proceeds.  There are multiple fatal flaws with this argument, not least of which is that it is raised only by self-serving testimony and documents "produced" months after the close of discovery.

-6-

The largest and most fatal flaw in Defendant's argument that he never received and therefore did not owe this money is that it is flatly contradicted by the 2020 Agreement. That document, which underpins Mr. Silberstein's entire defense, recites that "[Yoel Silberstein] **has received a loan**" and that "the amount due [under that loan] as of today **is greater than four million dollars**" ECF No. 39-7 (emphasis added).  This is a document that Defendant admits he signed and indeed urges the Court to consider. Furthermore, the idea that Mr. Silberstein did not receive the economic benefit of the Note is further belied by his own testimony that the Note came about, according to him, following his repeated demands to Mr. Goldman that he compensate Mr. Silberstein for his work. SOF ¶¶ 24, 30–31.  Mr. Silberstein repeatedly claimed under oath the the loan proceeds were "money owed to him.: SOF ¶¶ 33–34.  If, as he now implies, he never actually received the benefit of the Note, then it makes no sense why he would be so adamant in clarifying that the Note was not actually a loan, but money he was entitled to.  Accordingly, all of Defendant's hair splitting and should be disregarded in light of his admission and acknowledgment, years before this lawsuit was filed, that he received the economic benefit of this loan.  The Court must weigh Mr. Silberstein's contention with the fact that he admits $4.5 million was transferred into his bank account the day the Note was executed.

Again flatly contradicting the 2020 Agreement, Defendant suggests that while a bank account in his name did in fact receive millions of dollars on March 21, 2018, he (maybe) transferred the money back but he does not really know.  See ECF No. 42 ¶¶ 14–16.  Again, setting aside that the 2020 Agreement contains a written admission from Defendant that he owed over $4 million under the Note, Mr. Silberstein is trying to use cash flow records to call into question his receipt of funds.  The Debtor's general ledger entries, attached to the Ravid Declaration, demonstrate that, as of the date of the Note, the balance of Mr. Silberstein's obligations to the Debtor was precisely $3,350,000, the **exact amount** of the principal under the Note.  See Ravid

Decl. Ex. 3 at p. 1. As Mr. Silberstein explained during his deposition, there was an informal free flow of cash between him and the Debtor. SOF ¶¶ 16–19. Thus, the fact that some funds may have flowed back from his bank account to All Year, does not remotely suggest that it was somehow a refund of the loan. Rather, the proper evidence to focus on is the "net" value, as reflected in the Debtor's general ledger entries attached to the Ravid Declaration, that demonstrate that, as of the date of the Note, the balance of Mr. Silberstein's obligations to the Debtor was precisely $3,350,000, the **exact amount** of the principal under the Note. *See* Ravid Decl. Ex. 3 at p. 1.[3]

Further compounding the flaws in Defendant's argument is that they are based on documents he never produced in discovery. Defendant offers two financial records, and suggests that these documents were "produced to the Plaintiff." That is wildly misleading. These records were never once disclosed in discovery, which closed on **April 6, 2024.** ECF No. 18. The documents attached to Mr. Silberstein's Declaration were "produced" **on August 29, 2024**, when Defendant's counsel emailed them to Plaintiff's counsel without context or advanced notice, despite the fact that Plaintiff's discovery requests issued on **December 4, 2023**, specifically sought records related to exchange of funds and the use of the loan proceeds. Plaintiff thus never had an opportunity to examine these documents or question Mr. Silberstein about them. This is,

---

3   Defendant challenges the admissibility of the records attached to the Ravid Declaration. Those objections should be overruled. First, the Ravid Declaration lays the foundation for the authentication of those records and their admission into evidence under the business records hearsay exception. *See* FRE 803(6). Mr. Ravid is the Plan Administrator for the Debtor and before that he served as the Debtor's CEO and CRO. Ravid Decl. ¶ 2. These are the Debtor's records, inherited by Mr. Ravid after he took over on March 4, 2021. The custodian of a business record does not have personal knowledge of the record. Rather, the custodian need only explain that the record was kept in the course of ordinarily conducted business activity. *See Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.*, 317 F. Supp. 2d 373, 378 (S.D.N.Y. 2004); *Sec. & Exch. Comm'n v. Donnan*, No. 1:12-CV-2831-ODE, 2014 WL 11829334, at *4 (N.D. Ga. Sept. 15, 2014) (finding that a review of the financial records by a CRO with knowledge of the business was sufficient foundation for an 803(6) exception). The Ravid Declaration does precisely that. Ravid Decl. ¶ 12. As such, he has the requisite experience and knowledge to attest to the foundational elements of the business record exception and the records' authenticity. Ravid Decl. ¶¶ 4–5. Moreover, Defendant does not raise, as he must, a reason to doubt the truthfulness of these records. See FRE 803(6)(E).

unfortunately, in keeping with Defendant's consistent lack of respect for these proceedings and cavalier approach to procedure. The Court should see through these distractions and hold Defendant to his admissions. He signed the note. His bank account received the funds. He admitted in 2020 that he owed over four million dollars under the Note. These undisputed facts clear the way for summary judgment.

V.    **THERE IS NO QUESTION OF FACT CONCERNING DEFENDANT'S WORK FOR GOLDMAN**

As discussed in Plaintiff's Opening Brief, the 2020 Agreement is a fraudulent transfer because it forgives something, namely Mr. Silberstein's note obligations to the Debtor, in exchange for nothing. That is because even if Mr. Silberstein was owed anything it was not from the Debtor. Instead, such obligation arose from his business dealings with his long-time friend and business partner, Mr. Goldman, after they began working on these development projects in 2012 and 2013.

Defendant admits in his Response that his work began before the Debtor's existence but urges the Court to turn a blind eye to that fact because "his work on these projects continued well after the Debtor's formation." *See* Response p. 20. However, Defendant never connects (and cannot connect) his services to the Debtor itself. Instead, Defendant has only the fact that the Debtor eventually came to control these properties. Response pp. 20–21. But there is no evidence that Mr. Goldman ever assigned these alleged oral "agreements" he had with Mr. Silberstein to the Debtor. Instead, the record establishes that these men were quite clear who they were dealing with—each other.

VI.    **THERE IS NO QUESTION THAT ALL YEAR WAS INSOLVENT IN OCTOBER 2020**

To those familiar with the All Year bankruptcy, the notion that All Year was somehow financially healthy in October 2020 is farcical. In more hairsplitting, Defendant asks the Court to carve out a potential zone of solvency between October 2020, and November 2020, when All Year

defaulted and faced, according to its auditors, "[m]aterial doubts in respect of the continuation of the Company as a going concern." SOF ¶ 52: Ravid Decl. Ex. 4. The tests under both § 548 and § 273 of the New York Debtor & Creditor Law do not require the Debtor to be in default to be insolvent. Rather § 548 requires that the Debtor's debts exceeded its assets and § 273 requires only that the remaining assets of the debtor were unreasonably small.

### VII. DEFENDANT ADMITTED TO POST MATURITY INTEREST IN THE 2020 AGREEMENT

Finally, Defendant raises arguments concerning the calculation of damages. Chief among those arguments is his contention that there is no evidence interest would continue post maturity. That is not true. Again, the 2020 Agreement undermines Defendant's position. In that document, Mr. Silberstein agreed that he owed "over four million dollars" as of October 2020. The Note matured under its terms on March 30, 2019. At 16% interest, the total amount due and owing at that time would have been about $3,886,000. Thus, it is not possible for Mr. Silberstein's admission that, as of October 2020 he owed the Debtor over $4 million, to be true at the same time as his arguments regarding the calculation of interest.

### CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court grant Plaintiff partial summary judgment on Counts I, II, and IV of its Amended Adversary Complaint, awarding thereon in the amount of $6,834,000.97, plus all further accruing interest, and for any other relief as the Court deems just and proper.

Dated: October 14, 2024

                                                Respectfully submitted,

                                                CHAPMAN AND CUTLER LLP

By: _____
                                                                Eric Silvestri

Eric Silvestri (admitted *pro hac vice*)
CHAPMAN AND CUTLER LLP
320 South Canal
Chicago, Illinois 60606
(312) 845-3000
silvest@chapman.com

-11-